**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Angelo DeFRISCO and Pat Carrano, Defendants-Appellants.**

**No. 30695**
**Summary Calendar.***

United States Court of Appeals, Fifth Circuit.

April 1, 1971.

* [1] Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al., 5 Cir. 1970, 431 F.2d 409, Part I.

138

E. David Rosen, Miami, Fla., for Carrano and DeFrisco.

Max Lurie, Miami, Fla., for DeFrisco.

Robert W. Rust, U. S. Atty., Miami, Fla., Mervyn Hamburg, Criminal Div., S. Michael Levin, Dept. of Justice, Washington, D. C., for plaintiff-appellee.

Before WISDOM, COLEMAN, and SIMPSON, Circuit Judges.

WISDOM, Circuit Judge:

Angelo DeFrisco and Pat Carrano were convicted by a jury on the substantive counts of a three-count indictment charging them with knowingly making separate false statements to the Federal Housing Administration for the purpose of obtaining F.H.A. backing for a loan to DeFrisco, in violation of 18 U.S.C. § 1010, and with conspiring to commit those offenses, in violation of 18 U.S.C. § 371. DeFrisco was fined $600, and Carrano, $800. Both have appealed.

The appellants make two contentions: (1) that the district court erred in admitting into evidence, over their objection, certain records of the Merchants Credit Bureau, and (2) that the district court erred in sending a copy of the indictment to the jury without instructing the jurors that the indictment was not evidence. We find no merit to these contentions.

### I.

The question of the admissibility of the credit bureau's records arose in the following manner. At the trial the Government's evidence showed that on January 19, 1965, DeFrisco went to the office of the Arthur R. Kingsley Company to obtain an F.H.A. insured $15,-700 mortgage on a house he proposed to acquire. There DeFrisco told a loan officer that he was employed at the Johnina Hotel, that the owner of the hotel was Carrano, and that he earned annually $7,500 in salary plus $2,500 in tips or commissions. In reality DeFrisco's annual salary was $2,500; the amount of tips he earned was unknown, but on his 1964 federal income tax return he reported only $1,000 in tips. At the trial DeFrisco explained that a real estate broker had told him that his

$2,500 salary was insufficient to enable him to secure F.H.A. financing and that he should report his annual income to the F.H.A. as $10,000. Accordingly, he reported that amount to the Kingsley loan officer. The loan officer put the information that DeFrisco supplied her on an application for F.H.A. insurance, which DeFrisco signed. She then sent to Carrano an F.H.A. form for verification of DeFrisco's employment.

At the trial Carrano testified that when he received the verification form from the mortgage company, he instructed his secretary to report DeFrisco's annual earnings as $2,500 in salary plus whatever amount DeFrisco told her he received as tips. DeFrisco then told the secretary that his tips amounted to $7,500 annually. When his secretary returned with the completed form, Carrano signed it. Although he saw the figures, he did not notice that they had been "inverted" so as to report $7,500 in salary and $2,500 in tips.

Following customary procedures for processing F.H.A. loan applications, the Kingsley loan officer telephoned Merchants Credit Bureau and requested the preparation of a report on DeFrisco's credit standing. George Malin, the president of Merchants Credit Bureau, testified as to the contents of the credit report. The report and the accompanying notes indicated that an employee of the credit bureau had telephoned the Johnina Hotel. The hotel's co-owner, Vincent Teriaca, had verified the fact that DeFrisco was employed there and stated that he earned $10,000 annually. A credit report containing this information was prepared and sent back to the mortgage company. The loan officer, however, soon notified the credit bureau that its information did not coincide with hers—i. e., her figures showed a breakdown of DeFrisco's income into salary and tips. Although there was no memorandum or note in the credit bureau's file expressly stating that a second telephone call was made to the Johnina Hotel, Malin testified that such a call would have been the routine manner in which the mortgage company's re-inquiry would be handled. And, indeed, the revised credit report indicates that sometime after the preparation of the first report Carrano informed someone at the credit bureau that DeFrisco's annual earnings included $7,500 in salary and $2,500 in tips or commissions.

The defendants object strenuously to the admission into evidence of the credit bureau's revised report. Malin of course had no personal knowledge concerning the preparation of DeFrisco's credit report. He could not state with certainty which of his employees did prepare the report. Moreover, there was no documentary evidence in the credit bureau's files—other than the revised report itself—indicating that following the mortgage company's re-inquiry someone had in fact telephoned the Johnina Hotel, had spoken to Carrano, and had been told that DeFrisco annually earned $7,500 in salary and $2,500 in tips. Therefore, the defendants argue, Malin's testimony and the credit bureau's report were hearsay, lacked the inherent probability of trustworthiness, and should not have been admitted.

Business records are admissible in federal court as evidence of a transaction or occurrence if made in the regular course of business and if it was the regular course of business to make such records within a reasonable time of the transaction or occurrence. 28 U.S.C. § 1732(a). This Court has recently reviewed the principles governing the admissibility of business records in federal court:

> The purpose of the federal Business Records Act is to dispense with the necessity of proving each and every book entry by the person actually making it. The theory underlying the Act is that business records in the form regularly kept by the particular company and relied on by that company in the ordinary course of its business have a certain probability of trustworthiness. Louisville & Nashville R. R. Co. v. Knox Homes Corp., 5 Cir., 1965, 343 F.2d 887, 896; Central R. Co. of New Jersey v. Jules S. Sottnek Co.,

2 Cir. 1958, 258 F.2d 85, 88. Therefore, "so long as regard is paid to the indispensable fundamental trustworthiness of the proffered record, the statute ' * * * should of course be liberally interpreted so as to do away with the anachronistic rules which gave rise to its need and at which it was aimed.' " Missouri Pacific R. R. Co. v. Austin, 5 Cir. 1961, 292 F.2d 415, 422.

United States v. Lipscomb, 5 Cir. 1970, 435 F.2d 795, 802.[1]

In this case the district court held a hearing out of the presence of the jury. At the hearing Malin described to the court his firm's customary procedures for the preparation of a credit report. Malin testified that his employees routinely obtain employment information directly from the mortgage applicant's employer. They are encouraged to handle these inquiries by telephone. If received by telephone, the information is either jotted down on note-paper or placed directly on a special worksheet. All notes and worksheets are kept in the applicant's file. When all the credit information is assembled, the notes and worksheets are sent to a typist, who transcribes the information on a master sheet. The master sheet, or final report, is then duplicated and sent to the client who has requested the credit information. Turning to the DeFrisco file, Malin explained that the notations in the file indicated that DeFrisco's credit information had been obtained and assembled in the routine manner. Although there was no memorandum in the file expressly stating that a second telephone call had been made to the Johnina Hotel, Malin testified that such a call would have been the routine manner in which the mortgage company's re-inquiry would be handled and that since the income information had been corrected on the final credit report, he assumed that

this was the manner in which the new information had been obtained.

Following Malin's testimony out of the presence of the jury, the district court ruled that the credit reports were admissible as business records. Although the court thought that the question was a close one, it felt that the credit reports were admissible under the decision of this Court in Missouri Pacific R. R. Co. v. Austin, 5 Cir. 1961, 292 F.2d 415 and the general principles set forth in *Lipscomb*. We agree. *Missouri Pacific* concerned the admissibility under the federal Business Records Act, 28 U.S.C. § 1732, of credit reports compiled by Dun & Bradstreet, Inc. The evidence offered as to the preparation of those reports and their use in the ordinary course of Dun & Bradstreet's business bears a remarkable similiarity to the testimony in this case:

Dun & Bradstreet, Inc. is in the business of compiling credit reports for use of commercial concerns. Approximately 95% of the information is obtained by interviews of the subject companies. Dun & Bradstreet has a file on Western Wood and Aviation Corporation. These files and papers are regular records kept in the regular course of the business of Dun & Bradstreet. The particular sheet offered is a credit report on Aviation Corporation. It reports what Flocks stated to the investigator. The investigator's name or identity is not known. Neither the witness nor the former head of the department can now be sure who the investigator was. The business of Dun & Bradstreet is preparing reports of this nature for transmission to other business concerns. Ordinarily people in the trade place considerable reliance on the reports of Dun & Bradstreet. In the usual course of its business the information in this proffered report would have come from

---

1. The Court added: "Of course, not all records may be admissible in all cases in a criminal trial; it is the duty of the court to determine in each instance whether the particular record is constitutional-ly admissible under the Sixth Amendment guarantee of confrontation of witnesses. McDaniel v. United States, 5 Cir. 1965, 343 F.2d 785." *Id.*

an investigator who talked directly to Flocks. It is now impossible to ascertain who the investigator was. The proffered report was among its permanent records and was brought to Court pursuant to a subpoena.

292 F.2d at 420. The Court indicated that such reports would ordinarily be admissible under the Act but held that these particular reports were inadmissible only because there was no evidence in the record that the crucial information had been recorded at or near the time of the interview. 292 F.2d at 422–423. In the case now before us, however, it is undisputed that the records were timely made. Moreover, Malin's testimony sufficiently establishes that the reports were made in the regular course of the Merchants Credit Bureau's business for legitimate business purposes. Therefore, on the authority of the Business Records Act and the *Missouri Pacific* case, we hold that the district court did not err in admitting into evidence the reports of the Merchants Credit Bureau.

### II.

■ The defendants' second contention is that the district court erred in sending a copy of the indictment to the jury without instructing the jurors that the indictment was not evidence of the defendants' guilt. At the trial the defendants requested the court to give the jury such an instruction, but the court declined to do so.

When the trial court allows the jury to have a copy of the indictment in the jury room during deliberations, it is undoubtedly the better practice to instruct the jurors explicitly that the indictment is not itself evidence of the accused's guilt. *See* Garner v. United States, 6 Cir. 1957, 244 F.2d 575, 577. Nevertheless, it is not reversible error to refuse to give such an instruction if the substance of the requested instruction has been sufficiently covered by the instructions. *Id.* In its instructions the court in this case continually referred to the indictment as merely "charging" or "alleging" the offenses. Moreover, the court

clearly and correctly instructed the jurors on the presumption of innocence, burden of proof, and reasonable doubt. In these circumstances we cannot say that the court's failure to give the requested instruction was reversible error. *See* Parr v. United States, 5 Cir. 1958, 255 F.2d 86, 89–90; United States v. Martin, 2 Cir. 1955, 223 F.2d 666, 667.

Therefore, the judgment of the district court is

Affirmed.