**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Amos P. BROWN, Sr.,
Defendant-Appellant.**

No. 75–3503.

United States Court of Appeals,
Fifth Circuit.

March 18, 1977.

---

Michael R. N. McDonnell, Tallahassee, Fla., for defendant-appellant.

Clinton Ashmore, U. S. Atty., Pensacola, Fla., Stewart J. Carrouth, Asst. U. S. Atty., Tallahassee, Fla., for plaintiff-appellee.

Before BROWN, Chief Judge, and TUTTLE and GEE, Circuit Judges.

JOHN R. BROWN, Chief Judge:

This case, one of the very few[1] in the recorded annals of the 85 year history of the Fifth Circuit, involves not the trials and tribulations, attempted frauds and other derelictions of taxpayers, which are common grist for our mill. Rather, it involves fraud by a tax preparer, one whose Twentieth Century occupation is now almost indispensable to all save those taxpayers who can use, or risk the use of, a short form with standard deductions. In this Bicentennial foray we see the hazards both to the system and to the protection of rights of the public and the individuals concerned.

---

1. *See United States v. Burks,* 5 Cir., 1975, 508 F.2d 672, *cert. denied,* 421 U.S. 1012, 95 S.Ct. 2418, 44 L.Ed.2d 681; *United States v. Dobbs,* 5 Cir., 1975, 506 F.2d 445; *United States v. Johnson,* 5 Cir., 1974, 495 F.2d 1097; *United States v. Miller,* 5 Cir., 1974, 491 F.2d 638, *reh. denied,* 493 F.2d 664, *cert. denied,* 419 U.S. 970, 95 S.Ct. 236, 42 L.Ed.2d 186; *United States v. Washburn,* 5 Cir., 1973, 488 F.2d 139; *Hull v. United States,* 5 Cir., 1966, 356 F.2d 919; *Hull v. United States,* 5 Cir., 1963, 324 F.2d 817; *Kaplan v. United States,* 5 Cir., 1957, 241 F.2d 521, *cert. denied,* 354 U.S. 941, 77 S.Ct. 1406, 1 L.Ed.2d 1539.

To be remembered is that it is the fraud or false misstatement of the preparer, not the taxpayer, which counts. Indeed, the tax properly due may be of no, or only secondary, significance.

Defendant-Appellant Amos P. Brown, Sr., a part-time income tax preparer, was convicted by a jury on 12 counts of counseling, procuring and advising the preparation and presentation of fraudulent and false United States Individual Income Tax Returns for others in violation of 26 U.S.C.A. § 7206(2), Internal Revenue Code.[2] The District Court subsequently denied Brown's motions for judgment of acquittal and for new trial and sentenced Brown to 11 concurrent terms of three years each, followed by three years probation. Brown appealed, asserting insufficiency of the evidence, the improper admission of prejudicial evidence, the Trial Court's failure to investigate possible jury misconduct and ineffective assistance of counsel. We find that the Trial Judge committed plain error by improperly admitting certain evidence which was highly prejudicial to the defendant. Accordingly, we reverse and remand for a new trial.

### In A Nutshell

Amos P. Brown, Sr., is a school teacher who has taught in Florida public schools since 1947. His educational background includes a bachelor's degree in Agricultural Education from Florida A. & M. University and an H. & R. Block course in income tax preparation. Except for the H. & R. Block course, he has had no formal courses in accounting. He has no prior criminal record.

After taking the H. & R. Block course in 1970, he began helping friends and neighbors, most of whom had low incomes and many of whom had little or no formal education,[3] prepare their income tax returns.[4] In preparing the returns, defendant relied on both written and oral evidence[5] of expenses furnished him by the taxpayer. Rarely, if ever, would the defendant double-check the information given him by the taxpayer by seeking information from a bank or other source concerning the proper amount of taxpayer's deductions.[6]

In 1973, an IRS audit of approximately 163 returns which had been prepared by Brown revealed that many contained substantially over-stated deductions.[7] Of these returns, 17[8] were culled out to serve as the basis of the present case.[9] The evidence does not reveal whether the IRS agent asked for, or received, supporting documents for deductions claimed by *both* spouses in each case, or by only one taxpayer of the pair. The evidence also does not reveal the grounds on which the IRS agent disallowed deductions. The evidence does disclose that the agent did not ask whether the taxpayer gave the same or different information to defendant before defendant prepared the audited return.[10]

---

**2.** 26 U.S.C.A. § 7206(2) provides:
 Any person who—
 *(2) Aid or assistance.*—Willfully aids or assists in, or procures, counsels, or advises the preparation or presentation under, or in connection with any matter arising under, the internal revenue laws, of a return, affidavit, claim, or other document, which is fraudulent or is false as to any material matter, whether or not such falsity or fraud is with the knowledge or consent of the person authorized or required to present such return, affidavit, claim, or document;
 shall be guilty of a felony and, upon conviction thereof, shall be fined not more than $5,000, or imprisoned not more than 3 years, or both, together with the costs of prosecution.

**3.** *See e. g.,* R. V, at 106, 110.

**4.** He charged approximately $10.00 for this service. R. IV, at 48.

**5.** *See, e. g.,* R. V, at 183.

**6.** *See* R. I, at 20.

**7.** In each audit, the burden of proving the proper amount of deductions was upon the taxpayer. R. V, at 131, 132.

**8.** Each of the 17 returns was a joint return.

**9.** Of the original 17 counts, the District Court directed a verdict of acquittal on Counts 1, 2, 4, 5, and 6, on the grounds that the evidence was insufficient. R. V, at 139.

**10.** R. V, at 132.

When the case was tried, the Government primarily based its proof on the testimony of *one* spouse taxpayer for each of the counts (the count witnesses) and on the testimony of the IRS agent who, prior to trial, conducted an audit of most of the returns prepared by Brown. Almost all of the count witnesses [11] testified that, with respect to challenged items, their true deductions were less than the figures stated on their returns. In addition, some testified that they did not tell or authorize the defendant to put down the higher figure on the return. In only three counts did the prosecutor inquire about deductible expenses incurred by or known to the non-testifying spouse. The evidence in the other counts does not reveal whether the figures given by the taxpayer include other such expenses incurred by or known to the non-testifying spouse.

The testimony most damaging to the defendant was given by the IRS agent, Adrienne Peacock. Witness Peacock testified that about 160 returns prepared by the defendant had been audited by the IRS and that between 90% and 95% of these returns contained overstated itemized deductions.

She did not have a list of the taxpayers, their names, or their records with her, nor did she have access to the documents for the purpose of refreshing her memory before she testified. She did not audit all of the tax returns in question. Because she was testifying solely from her recollection of these audits, the tax returns were not introduced into evidence and the taxpayers concerned (save for the 17 count taxpayers) were not called as witnesses, Peacock was not able to tell why the IRS considered the various deductions to be overstated,[12] and was further unable to supply direct proof of the overstatements.[13]

Upon consideration of all the evidence, including Witness Peacock's testimony, the jury returned a verdict of guilty as to Counts 3, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16 and 17. The Judge sentenced defendant to concurrent terms of three years each for every count except Count 17. For that count, the Judge sentenced defendant to three years probation, to be served after his prison sentence. After being found guilty and sentenced by the Court, the defendant moved for a judgment of acquittal notwithstanding the jury verdict and for a new trial.

---

11. The testimony of the count witnesses is summarized, *infra,* at note 17.

12. For the sake of illustration only, we point up five of the factors which could have contributed to the overstatements: [i] the inability of the taxpayer to prove his deductions, through the fact that he lost or never had records available to support his claimed expenses, [ii] the fact that the IRS had legitimate arguable disagreements with the deductions claimed, [iii] the *supplying of false or incorrect information* by the taxpayer to the defendant at the time the defendant prepared the returns, [iv] the taxpayer's giving to the IRS agent information or data different from that furnished preparer either as to taxpayer or his spouse, [v] a purposeful or even inadvertent inclusion by preparer of an amount or item other than that furnished by taxpayer, spouse or both.

13. In order to arrive at the conclusion that the deductions in these 160 returns were overstated, Peacock needed (i) each individual tax return, showing the itemized deductions taken by each taxpayer; (ii) and some proof that those deductions were materially false. Peacock got this "proof" of the overstatements through conversations with each of the taxpayers audited. Presumably, the proof consisted either of statements by these taxpayers to Peacock that they all gave different information to the defendant tax preparer than was put down in their returns, or that they were unable to substantiate their deductions, because they did not have supporting records. The proof could also have consisted of the fact that the IRS had legitimate arguable disagreements with all or some of the deductions claimed. However, a prerequisite to this form of proof *would be the* initial conversation by Peacock with each taxpayer, so that Peacock could determine the bases for the deductions taken.

The point to be emphasized, therefore, is that the information obtained by Peacock from the 160 taxpayers audited, in out-of-court conversations with each, was absolutely *vital to her* ultimate in-court conclusion that between 90% and 95% of the 160 returns she audited contained overstated itemized deductions. Without these taxpayers' out-of-court statements to Peacock, her in-court testimony could have no basis in fact, since she would have no way of knowing that the deductions were overstated.

The Judge denied both motions and this appeal followed.

## The Intent Requirement of 26 U.S.C.A. § 7206(2)

In a prosecution under 26 U.S.C.A. § 7206(2), the element of willfulness or intent is usually the most difficult to prove. In the misdemeanor and felony tax evasion statutes (26 U.S.C.A. §§ 7201 to 7207, inclusive), the word "willfully" generally connotes a voluntary, intentional violation of a known legal duty. *United States v. Pomponio*, 1976, —— U.S. ——, 97 S.Ct. 22, 50 L.Ed.2d 12; *United States v. Bishop*, 1973, 412 U.S. 346, 93 S.Ct. 2008, 36 L.Ed.2d 941. Proof of evil motive or bad intent is *not* required. *Pomponio, supra.* This showing of willfulness will most often be made by circumstantial evidence,[14] *see e. g., Spies v. United States, supra; United States v. Bur-* *rell,* 5 Cir., 1974, 505 F.2d 904; *United States v. Jernigan,* 5 Cir., 1969, 411 F.2d 471, since direct proof of willfulness, as that term is defined in *Pomponio* and in *Bishop,* may not be readily available.

In this case, proof of defendant's willfulness in preparing materially false and fraudulent returns proved to be the focus of much of the Government's proof. In part, proof of willfulness was offered through the testimony of the count witnesses by showing cumulatively a repetitious overstatement of deductions by the defendant.[15]

## The Peacock's Tale

The Government also introduced the testimony of IRS agent Adrienne Peacock, who testified that between 90% and 95% of about 160 returns prepared by defendant contained overstated itemized deductions.[16]

---

14. Circumstantial proof of intent may be made in a variety of ways:

By way of illustration, and not by way of limitation, we would think affirmative willful attempt may be inferred from conduct such as keeping a double set of books, making false entries or alterations, or false invoices or documents, destruction of books or records, concealment of assets or covering up sources of income, handling of one's affairs to avoid making the records usual in transactions of the kind, and any conduct, the likely effect of which would be to mislead or to conceal. If the tax-evasion motive plays any part in such conduct the offense may be made out even though the conduct may also serve other purposes such as concealment of other crime.

*Spies v. United States,* 317 U.S. 492 *supra* at 499, 63 S.Ct. 364 at 368, 87 L.Ed. 418 at 423.

Willfulness may also be shown by such affirmative acts of evasion such as concealment of financial transactions and the providing of false or incomplete information in an attempt to hamper the investigation . . . . . *Holland v. United States,* 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954); *United States v. Stone,* 431 F.2d 1286 (5th Cir. 1970), cert. denied, 401 U.S. 912, 91 S.Ct. 879, 27 L.Ed.2d 811 (1971); *Windisch v. United States,* 295 F.2d 531 (5th Cir. 1961); *McGrew v. United States,* 222 F.2d 458 (5th Cir. 1955). A consistent pattern of understatement has been held to present a jury question as to willfulness, *United States v. Tunnell,* 481 F.2d 149 (5th Cir. 1973); *Holland v. United States, supra,* as had the failure to report a

very substantial amount of income, *United States v. Schechter,* 475 F.2d 1099 (5th Cir. 1973); *Wardlaw v. United States,* 203 F.2d 884 (5th Cir. 1953). Finally making false statements to Treasury agents has been held to constitute the type of affirmative act of evasion necessary to permit a § 7201 conviction. *United States v. Beacon Brass Co.,* 344 U.S. 43, 73 S.Ct. 77, 97 L.Ed. 61 (1952); *United States v. Newman,* 468 F.2d 791 (5th Cir. 1972).

*United States v. Burrell,* 5 Cir., 1974, 505 F.2d 904, 911.

Generally, therefore, proof "of repetitious conduct [is] admissible for the limited purpose of showing the intent of the appellant, where, otherwise it might be claimed that the acts in the tax years were either inadvertent or innocent. See *Escobar v. United States,* 5 Cir. (1967), 388 F.2d 661." *United States v. Jernigan,* 5 Cir., 1969, 411 F.2d 471, 473.

15. The prosecutor attempted to establish an avaricious motive on the part of the defendant, by asking the count witnesses whether the defendant had guaranteed them a refund and whether he had asked them to share any refund with defendant. These questions were consistently answered in the negative.

16. Immediately after Peacock testified, the Trial Judge made the following statement to the jury:

Ladies and gentlemen of the jury, at this point I want to instruct you that the testimony of this witness is admissible for one purpose. If, after weighing all of the other evi-

There could be no doubt that her testimony played a substantial part in the jury's finding that the defendant possessed the intent required by § 7206(2). Of the 17 counts originally brought by the Government, five were dismissed for insufficiency of the evidence. Since the remaining counts did not present particularly strong evidence of willfulness on the part of the defendant [17] (although sufficient to place the matter before

dence in this case and the exhibits, you find that Mr. Brown committed the acts that he is charged with in the seventeen counts of this indictment, you may then consider this testimony when you begin your deliberations, as to whether or not Mr. Brown had the specific intent that it was required to commit the offense that he is charged with.

This evidence is not admitted to prove the offenses that he is charged with in this indictment, and Mr. Brown is not on trial for any other offense not named in the indictment.

This evidence is admitted to show two things: the pattern of conduct, if you should so find from this evidence, and intent. And that is all.

R. V, at 133–34. During its formal jury charge, however, the District Court made no mention of the Peacock testimony.

17. In order to clarify our assertion that the Government's count witness testimony as to defendant's willfulness, while legally sufficient, was from a probative standpoint somewhat weak, so that the introduction of Peacock's testimony became extremely damaging to defendant, we summarize here the testimony given by all of the count witnesses remaining after the Trial Judge granted a motion of acquittal on five of the counts. In the following summary, all of the returns are joint returns, and the name of the testifying spouse is underlined. The following abbreviations will be used throughout this footnote:

 (i) MIPs=Medical Insurance Premiums
 (ii) IEIP=Interest Expense on Installment Purchases
 (iii) CCs=Church Contributions
 (iv) IEMH=Interest Expense on Home Mortgage
 (v) CLs=Casualty Losses

COUNT 3: GEORGE W. & MOZELL CALDWELL

| Item overstated | Amount on Tax-Payer's Return | Amount Allowed By IRS |
|---|---|---|
| (a) MIPs | $535.00 | $296.92 |
| (b) IEIP | $487.00 | $163.43 |

*Taxpayer's testimony:*

As to (a), taxpayer testified that he told defendant that he paid $21.45 per month ($275.00 per year).

As to (b), taxpayer testified that he had interest expenses on installment purchases totalling $178.00, plus the interest on a principal amount of $123.00 (the exact amount was not specified). Taxpayer also disclosed that he had a check for additional interest expense which he was not able to locate.

COUNTS 7 & 8: COLEY & NORETHA HEARNS

| Item overstated | Amount on Tax-Payer's Return | Amount Allowed By IRS |
|---|---|---|
| (a) 1971 CCs | $575.00 | $75.00 |
| (b) 1971 MIPs | $330.00 | $174.60 |
| (c) 1971 IEIP | $313.00 | -- |
| (d) 1971 IEMH | $799.00 | $671.47 |
| (e) 1972 CCs | $425.00 | $75.00 |
| (f) 1972 MIPs | $402.00 | $174.60 |
| (g) 1972 Interest Expense paid to Sears, Roebuck & Co. | $87.00 | $4.73 |

| Item overstated | | Amount on Tax-Payer's Return | Amount Allowed By IRS |
|---|---|---|---|
| (h) | 1972 IEIP | $495.00 | -- |
| (i) | 1972 Interest Expense paid to State Credit Union | $19.00 | $0.59 |

*Taxpayer's testimony:*

As to (a), taxpayer testified that he gave defendant a figure either of $50 or $75, but he did not give him a figure of $575.

As to (b), taxpayer testified that he paid $174.60 per year.

As to (c), taxpayer did not recall the correct figure and did not recall what figure he told the defendant to put down.

As to (d), the taxpayer did not remember exactly what the correct figure was, but, after suggestive questions from the prosecutor, remembered that he gave the IRS auditor the figure of $671.47.

As to (e), taxpayer testified that he told the defendant $50 or $75.

As to (f), taxpayer testified that he did not know exactly how much he paid, but he thought it was around $18 per month ($216 per year).

As to (g), the taxpayer simply did not know how much he paid.

As to (h), taxpayer testified that he had no interest expenses on installment purchases during 1972.

As to (i), taxpayer testified that the correct amount was $0.59.

## COUNT 9: EDWARD A. & AUDREY V. LEEKS

| Item overstated | | Amount on Tax-Payer's Return | Amount Allowed By IRS |
|---|---|---|---|
| (a) | Personal exemption for Taxpayer's Daughter | $750.00 | -- |
| (b) | MIPs | $526.00 | $416.00 |
| (c) | Doctors, Medical, and Drugs | $763.00 | $203.00 |
| (d) | CCs | $300.00 | $150.00 |
| (e) | CLs | $186.00 | -- |

*Taxpayer's testimony:*

As to (a), taxpayer testified his daughter was born in January of the year following the taxable year.

As to (b), taxpayer testified that his actual premiums were $416 and that he gave defendant a sheet of paper totalling this amount when defendant prepared his return.

As to (c), taxpayer testified that he gave defendant a sheet of paper totalling $203 when defendant prepared the return.

As to (d), taxpayer testified that he gave defendant a sheet of paper totalling $150.

As to (e), taxpayer testified that he sustained no casualty losses during the year in question.

## COUNT 10: SAMUEL LEE & SHIRLEY McKAY

| Item overstated | | Amount on Tax-Payer's Return | Amount Allowed By IRS |
|---|---|---|---|
| (a) | MIPs | $417.00 | $167.00 |
| (b) | IEIP | $309.00 | -- |
| (c) | CCs | $350.00 | $167.00 |
| (d) | CLs | $50.00 | -- |

*Taxpayer's testimony:*

As to (a), taxpayer testified first that he did not remember how much he paid and that he did not have any supporting records. Later, he testified that he told defendant that he paid $3.22 per week ($167.44 per year).

As to (b), taxpayer testified that he had no interest expenses.

As to (c), taxpayer did not remember how much he paid and that he did not keep any records of church contributions. The prosecutor suggested that he actually paid $194 per year.

As to (d), taxpayer testified that he sustained no casualty losses.

## COUNT 11: JOE L. & EVELYN PITTMAN

| Item overstated | Amount on Tax-Payer's Return | Amount Allowed By IRS |
| --- | --- | --- |
| (a) MIPs | $450.00 | -- |

*Taxpayer's testimony:*

As to (a), taxpayer testified that her husband's company paid for medical insurance, but that they had no other medical insurance.

There is no evidence in the record as to how much, if any, was deducted from Mr. Pittman's salary for medical insurance premiums.

## COUNTS 12 & 13: JOE J. & LILLIE B. SHACK

| Item overstated | Amount on Tax-Payer's Return | Amount Allowed By IRS |
| --- | --- | --- |
| (a) 1971 MIPs | $582.00 | $250.38 |
| (b) 1971 IEIP | $395.00 | -- |
| (c) 1972 MIPs | $644.00 | $250.38 |
| (d) 1972 IEIP | $617.00 | -- |

*Taxpayer's testimony:*

As to (a), taxpayer testified that he actually paid out $384.80 and that he did not recall what figure he gave to the defendant.

As to (b), taxpayer testified that he did not recall, and had no supporting records for, the amount of interest expense in 1971. He did not remember what figure he gave the defendant.

As to (c), taxpayer testified that he paid $305.96, but he could not recall what figure he gave the defendant.

As to (d), taxpayer testified that he did not recall what expenses he had and did not know what figure he gave the defendant. He did not have any supporting records and did not have any when he was audited by the IRS.

## COUNT 14: CLARENCE A. & EVELYN SIKES

| Items overstated | Amount on Tax-Payer's Return | Amount Allowed By IRS |
| --- | --- | --- |
| (a) MIPs | $381.00 | $89.90 |

*Taxpayer's testimony:*

As to (a), taxpayer testified that he and his wife paid approximately $89.80 per year, although he was not completely sure of the figure. He did not remember the exact amount paid.

COUNT 15: ROBERT A. & MARY L. SIMS

| Items overstated | Amount on Tax-Payer's Return | Amount Allowed By IRS |
|---|---|---|
| (a) MIPs | $412.00 | $223.48 |
| (b) Total contributions | $360.00 | $80.00 |
| (c) IEMH | $723.00 | -- |
| (d) IEIP | $412.00 | -- |
| (e) CLs | $36.00 | -- |

*Taxpayer's testimony:*

As to (a), taxpayer testified that he paid $21.87 per month ($262.44 per year). He testified that he gave the defendant the receipts for this.

As to (b), taxpayer testified that he and his wife paid $146.00 per year. He had no supporting records.

As to (c), taxpayer claimed that he had no home mortgage interest expense for that taxable year.

As to (d), there was no taxpayer testimony.

As to (e), the taxpayer testified that he sustained no casualty losses for that taxable year.

COUNT 16: TOMMIE & SILVIA C. SPEIGHTS

| Item overstated | Amount on Tax-Payer's Return | Amount Allowed By IRS |
|---|---|---|
| (a) IEIP | $492.00 | -- |
| .(b) CCs | $298.00 | $100.00 |
| (c) MIPs | $606.00 | $167.44 |

*Taxpayer's testimony:*

As to (a), taxpayer testified that he did not remember what his expenses were or what he told the defendant. He did not have any supporting records.

As to (b), taxpayer testified that he actually paid about $100, but he could not remember what figure he gave the defendant.

As to (c), taxpayer testified that he told the defendant he paid $3.22 per week ($167.44 per year).

COUNT 17: EDDIE LEE & LOLA MAE TRIPP

| Item overstated | Amount on Tax-Payer's Return | Amount Allowed By IRS |
|---|---|---|
| (a) MIPs | $541.00 | $140.92 |
| (b) CCs | $722.00 | $520.00 |
| (c) IEIP | $397.00 | -- |

*Taxpayer's testimony:*

As to (a), taxpayer testified that he paid between $2 and $3 per week and that he did not believe that he paid more than $3 per week ($156.00 per year). He does not have any supporting records.

As to (b), taxpayer testified that he did not know how much he paid in church contributions, he did not remember what he told the defendant, and he had no supporting records.

As to (c), taxpayer testified that he did not remember how much he paid or how much he told the defendant.

the jury), Peacock's testimony was particularly devastating.

If Peacock's testimony was admissible, we might affirm this case. *See* note 31, *infra*. If the testimony was not admissible, however, we must vacate the conviction and remand for a new trial, in light of the prejudicial nature of the evidence and especially since it permeated all the counts, both probatively weak and strong, and the cumulative effect of numerous counts of repetitive acts could serve to meet the element of willfulness. *See* note 26, *infra*.

On this appeal, the Government asserts that Peacock's testimony was admissible under the rule that evidence

> of commission of other crimes closely related in both time and nature to the crime charged may be admitted to establish identity, *Halfen v. United States,* 5 Cir. 1963, 321 F.2d 556, 558, cert. denied, 1964, 376 U.S. 934, 84 S.Ct. 704, 11 L.Ed.2d 653, guilty knowledge, *United States v. Dryden,* 5 Cir. 1970, 423 F.2d 1175, 1178, cert. denied, 398 U.S. 950, 90 S.Ct. 1869, 26 L.Ed.2d 290, intent, *United States v. Smith,* 5 Cir. 1970, 433 F.2d 1266, 1270, cert. denied, 1971, 401 U.S. 977, 91 S.Ct. 1206, 28 L.Ed.2d 328, motive, *Huff v. United States,* 5 Cir. 1959, 273 F.2d 56, 60, or a common scheme, plan, design or system of criminal activity of which the crime charged is a part, *United States v. Sutherland,* 5 Cir. 1970, 428 F.2d 1152, 1156.

*United States v. Broadway,* 5 Cir., 1973, 477 F.2d 991, 994.

We conclude, however, that Peacock's testimony was inadmissible under *Broadway* (as well as its modern counterpart, F.R. Evid. 403 and 404(b)), and, more important, was independently inadmissible under the hearsay rule. Because the ultimate underlying defect in Peacock's testimony was its hearsay character, we proceed to a discussion of that issue first.

### Hearsay

■ This trial, conducted after July 1, 1975, was governed by the federal rules of Evidence. Under F.R.Evid. 801, hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."[18]

In this case, Peacock's testimony that between 90% and 95% of the returns she audited contained substantially overstated itemized deductions was introduced for the sole purpose of proving, circumstantially, the "willfulness" requirement of § 7206(2). In order to arrive at the conclusion that the deductions in these returns were overstated, Peacock's perusal of the 160 tax returns was not sufficient, since the returns obviously do not show on their face which deductions are overstated. The record shows that Peacock must have gotten her "proof" of the overstatements through conversations with each of the taxpayers audited. Presumably, the proof consisted either of statements by these taxpayers to Peacock that they all gave different information to the defendant tax preparer than defendant put down on their returns, or that they

---

**18.** Most definitions are substantially similar. In *United States v. Williamson,* 5 Cir., 1971, 450 F.2d 585, 589, *cert. denied,* 405 U.S. 1026, 92 S.Ct. 1297, 31 L.Ed.2d 486, we defined "hearsay" as

any out-of-court statement introduced in evidence for the purpose of proving the truth of the matter contained in the statement. [Citing McCormick, Evidence (3d Ed.) § 228; 5 Wigmore, Evidence (3d Ed.) § 1361]. Most if not all of the mystery and fog enshrouding this traditionally enigmatic rule of evidence evaporate if that textbook definition, well entrenched in our case law, is kept in mind.

Most significantly, . . . it demolishes the fairly wide-spread misconception that somehow *words alone,* if they are not the words of the person testifying, must automatically be excluded. Words are not hearsay unless they constitute statements, and out-of-court statements are themselves not hearsay unless they are introduced for the purpose of proving facts contained in, or asserted by, those statements. *See also* ALI, Model Code of Evidence, Rule 501.

were unable to substantiate their deductions, because they did not have any (or had inadequate) supporting records. The proof might also have consisted of the fact that the IRS had legitimate disagreements with all or some of the deductions claimed. However, a prerequisite to this form of proof would be the initial conversation between Peacock and each taxpayer, so that Peacock could determine the bases for the deductions claimed.

The point to be emphasized, therefore, is that the information obtained by Peacock from the out-of-court statements made by the 160 taxpayers whose returns she audited, was absolutely vital to her ultimate in-court conclusion that between 90% and 95% of the 160 returns she audited contained substantially overstated itemized deductions. Because her testimony had to have been based directly on the out-of-court statements of these taxpayers, defendant had no opportunity to test their ultimate assumptions through cross-examination. He obviously could not cross-examine the taxpayers concerned, because they were not in court. He could not even cross-examine Peacock adequately, because she did not have with her any of the records of conversations she had had with these taxpayers, but was testifying solely from memory, in the most general, amorphous terms. Thus, the jury had no way to examine the trustworthiness of Peacock's testimony, because it could not examine the statements of the declarant taxpayers or others on which Peacock's testimony was directly and substantially founded. Given the rationale of the hearsay rule,[19] a clearer case of hearsay testimony would be difficult to imagine.[20]

■ Nor is her testimony admissible under any of the exceptions to the hearsay rule. This is not a recorded recollection (F.R.Evid. 803(5)), a record of regularly conducted activity[21] (F.R.Evid. 803(6)), or a

---

**19.** Twenty-five years ago, Professor Morgan analyzed the hearsay rule and identified its rationale as based on the untrustworthiness of hearsay statements: "[S]hould we not recognize that the rational basis for the hearsay classification is not the formula, 'assertions offered for the truth of the matter asserted,' but rather the presence of substantial risks of insincerity and faulty narration, memory, and perception?" Morgan, Hearsay Dangers and the Application of the Hearsay Concept, 62 Harv.L.Rev. 177, 218 (1948).

**20.** Peacock's testimony also inescapably presented by implication the facts leading to her conclusion which she got from other non-testifying declarants, such as the taxpayers concerned. The implication was strong that she satisfied herself from talking to others that what the preparer entered was not what the taxpayer told him. It was an implied assertion that the defendant was responsible for the repetitious acts or practices from which the jury could infer the requisite willfulness. It was an assertion, in other words, of the ultimate fact that these faulty returns were due to defendant's acts.

**21.** We had occasion to discuss the statutory forerunner of F.R.Evid., 803(6), the Business Records Act, 28 U.S.C.A. § 1732(a), in *United States v. Lipscomb,* 5 Cir., 435 F.2d 795, 802:

Business records are admissible in federal court as evidence of a transaction or occurrence if made in the regular course of business and if it was the regular course of business to make such records within a reasonable time of the transaction or occurrence. 28 U.S.C. § 1732(a). The purpose of the federal Business Records Act is to dispense with the necessity of proving each and every book entry by the person actually making it. The theory underlying the Act is that business records in the form regularly kept by the particular company and relied on by that company in the ordinary course of its business have a certain probability of trustworthiness. *Louisville & Nashville RR Co. v. Knox Homes Corp.,* 5 Cir. 1965, 343 F.2d 887, 896; *Central R. Co. of New Jersey v. Jules S. Sottnek Co.,* 2 Cir. 1958, 258 F.2d 85, 88. Therefore, "so long as regard is paid to the indispensable fundamental trustworthiness of the proffered record, the statute ' * * * should of course be liberally interpreted so as to do away with the anachronistic rules which gave rise to its need and at which it was aimed.'" *Missouri Pacific RR Co. v. Austin,* 5 Cir. 1961, 292 F.2d 415, 422. Of course, not all records may be admissible in all cases in a criminal trial; it is the duty of the court to determine in each instance whether the particular record is constitutionally admissible under the Sixth Amendment guarantee of confrontation of witnesses. *McDaniel v. United States,* 5 Cir. 1965, 343 F.2d 785.

This analysis was explicitly adopted by this Court in *United States v. Burrell,* 5 Cir., 1974,

public record or report (F.R.Evid. 803(8)). It was the mere unrefreshed, sometimes borrowed, memory of a witness testifying on the basis of what she had been told by others. Furthermore, there can be no doubt that Peacock's testimony was extremely prejudicial to defendant. *See* note 17, *supra.* Thus, because of the hearsay problem raised by Peacock's testimony, we would reverse and remand this case, even if her testimony was otherwise admissible under the *Broadway* standard.[22]

### *"Other Crimes" Evidence*

■ F.R.Evid. 404(b) provides that "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in con-

formity therewith. It may however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." [23]

Rule 404(b) is subject, of course, to the strictures of Rule 403, which provides that, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

We do not today decide the extent to which these new evidentiary rules alter the common law rules set forth in *Broadway* and its ilk.[24] However, giving F.R.Evid.

---

505 F.2d 904, 908–09, to hold inadmissible in a tax evasion case the investigatory report compiled by the accounting firm engaged in defendant's employer to audit his accounts following his discharge. *See also United States v. DeFrisco,* 5 Cir., 1971, 441 F.2d 137, 139–40.

**22.** The dissent suggests that Peacock's testimony was admissible under F.R.Evid. 703 as expert testimony. We do not dispute that expert witnesses may rely upon hearsay testimony, as this Court properly held *en banc* in *United States v. Williams,* 5 Cir., 1971, 447 F.2d 1285 (*en banc*). In this case, however, it is clear that Peacock was not in fact put on the stand as an expert witness. Neither did she undertake to testify as an expert. Her testimony was to establish as a fact—not opinion—that defendant had committed similar acts in the past. The deficiency which we find is not that she was incompetent to express opinions, but that what she was affirming as a fact—not an opinion—was not known sufficiently to her personal knowledge. Therefore, F.R.Evid. 703 and the rule stated in *United States v. Williams, supra,* have nothing to do with this case.

**23.** The Advisory Committee Notes to Rule 404(b) provide:

"No mechanical solution is offered. The determination must be made whether the danger of undue prejudice outweighs the probative value of the evidence in view of the availability of other means of proof and other facts appropriate for making decision of this kind under Rule 403."

The Senate Committee Report on this provision noted that

"This rule provides that evidence of other crimes, wrongs, or acts is not admissible to

prove character but may be admissible for other specified purposes such as proof of motive.

"Although your committee sees no necessity in amending the rule itself, it anticipates that the use of the discretionary word 'may' with respect to the admissibility of evidence of crimes, wrongs, or acts is not intended to confer any arbitrary discretion on the trial judge. Rather, it is anticipated that with respect to permissible uses for such evidence, the trial judge may exclude it only on the basis of those considerations set forth in Rule 403, i. e. prejudice, confusion or waste of time."

S.Rep. No. 93–1277, 93d Cong., 2nd Sess. (1974), reprinted in [1974] U.S.Code Cong. & Ad.News pp. 7051, 7071.

The House Committee Report provides that

"The second sentence of Rule 404(b) as submitted to the Congress began with the words 'This subdivision does not exclude the evidence when offered'. The Committee amended this language to read 'It may, however, be admissible', the words used in the 1971 Advisory Committee draft, on the ground that this formulation properly placed greater emphasis on admissibility than did the final Court version."

H.Rep. No. 93–650, 93d Cong., 2d Sess. (1974), reprinted in [1974] U.S.Code Cong. & Ad.News pp. 7075, 7081.

**24.** At the very least, it would appear that the pre-Rule cases may supply guidance in divining and applying the policies underlying the Federal Rules. *See, e. g., United States v. Bloom,* 5 Cir., 1976, 538 F.2d 704, 708. The main case we rely on for this purpose is *Broadway,* where, pointing out "the strong possibility of

404(b) its most liberal interpretation, Peacock's testimony would be inadmissible as "evidence of other crimes, wrongs, or acts" without, at a minimum, proof that the returns testified to contained substantially overstated itemized deductions, for it is exactly that proof which constitutes the evidence of other crimes. In order to get this proof, Peacock must *necessarily*[25] have relied upon information given her in out-of-court conversations with the taxpayers whose returns she audited. As we have already shown, her testimony as to these out-of-court statements by out-of-court declarants constituted inadmissible hearsay. Because of its infection as inadmissible hearsay, her testimony was also inadmissible under F.R.Evid. 404(b), because her testimony did not contain admissible evidence of other crimes, wrongs, or acts.

### Plain Error

■ It is the Government's position that, even if the District Court erred in admitting Peacock's testimony, we should not vacate the conviction because defendant failed to object. This Court, however, can recognize plain errors or defects affecting substantial rights even if there is no timely objection at trial. F.R.Crim.P. 52(b). See, e.g., *United States v. Morales,* 5 Cir., 1973, 477 F.2d 1309, 1315; *United States v. Collins,* 5 Cir., 1972, 472 F.2d 1017, 1018; *United States v. Garber,* 5 Cir., 1972, 471 F.2d 212, 217; *United States v. Jacquillon,* 5 Cir., 1972, 469 F.2d 380, 386. As the name implies, plain errors "are those involving serious deficiencies which affect the fairness, integrity or public reputation of the judicial proceedings or which constitute obvious error."[26] *United States v. Collins, supra,* at 1018; *United States v. Jacquillon, supra,* at 386. Such a strict standard "is necessary in order to promote efficient judicial administration and to prevent parties from gambling for favorable verdicts and then resorting to appeal on errors that might have easily been corrected by objection at trial."

prejudice inherent in the use of such [other crimes] evidence," 477 F.2d 995, and its tendency to confuse the jury, we ruled that "in cases where intent or guilty knowledge is sought to be proved by evidence of similar offenses . . . the proof of other related offenses [must] 'be plain, clear, and conclusive, and evidence of a vague and uncertain character is not admissible.' . . . [W]hen proof of an assertedly similar offense is tendered to establish necessary intent, the other offense proved must include the essential physical elements of the offense charged, and these physical elements, but not the mental ingredients of the offenses must be clearly shown by competent evidence." *Id.*

If we were to decide this case solely on *Broadway,* we would reach the same conclusion as we do under the Federal Rules of Evidence, for Peacock did not give competent, admissible evidence of the physical elements of the offense charged—the fact that 90% to 95% of these returns contained substantially overstated itemized deductions. To the contrary, her testimony as to this point was blatant hearsay, and therefore neither competent nor admissible. Therefore, our end result is the same whether we rely upon the Federal Rules or upon *Broadway.* In either case, Peacock's testimony was inadmissible.

**25.** *See* note 13, *supra.*

**26.** The struggle to define plain error has resulted in a variety of formulations:

See Wright, Federal Practice & Procedure: Criminal § 856, pp. 372, 373, where cases are cited variously defining "plain error" as, " 'error both obvious and substantial,'[82] or

"82. *Sykes v. United States,* C.A.5th, 1966, 373 F.2d 607, 612.

'serious and manifest errors,'[83] or 'seriously

"83. *Feutralle v. United States,* C.A.5th, 1954, 209 F.2d 159, 163.

prejudicial error,'[84] or 'grave errors which

"84. *Cleaver v. United States,* C.A.10th, 1957, 238 F.2d 766, 770. *Himmelfarb v. United States,* C.A.9th, 1949, 175 F.2d 924, 950, certiorari denied 70 S.Ct. 103, 338 U.S. 860, 94 L.Ed. 527.

seriously affect substantial rights of the accused'.[85]

"85. *Wright v. United States,* C.A.10th, 1962, 301 F.2d 412, 414."

See also Moore's Federal Practice § 52.02(2). *See also United States v. Garber,* supra, at 217: "Where it is questionable that an error could have been cured by mere correction by counsel or by an instruction from the Court, the error rises to the level of plain and fundamental error."

*Id.*[27] Whether or not we will take notice of an error not raised below ultimately "must depend on the facts of the particular case." *United States v. Morales,* 5 Cir., 1973, 477 F.2d 1309, 1315.

■ No matter which of the commonly used definitions of plain error is applied, we have no difficulty in finding that the admission of Peacock's testimony meets the standard required. First, the error of its admission was obvious and manifest in two different ways. First, it was hearsay of the rankest kind and it was independently inadmissible under F.R.Evid. 404(b) and 403. Second, the admission of the testimony that 90% to 95% of the returns prepared by defendant contained substantially overstated deductions was severely prejudicial to the defendant. *See* note 17, *supra.* The instruction given by the Trial Judge immediately after Peacock's testimony (*see* note 16, *supra*) could not have removed the prejudice and unfairness resulting from the admission of this testimony. No other in-

struction was given. *See* note 16, *supra.* From our finding that the admission of the testimony was error, that the error was obvious, that it substantially prejudiced the defendant, and that that prejudice was not removed by a cautionary instruction, we conclude that the admission of Peacock's testimony was plain error necessitating reversal and remand for a new trial. *See* note 32, *infra.*

### Odds and Ends

#### Sufficiency of Evidence

■ In reviewing the record in this case, we have determined that, were the trial otherwise free of error, the evidence in at least some of the counts would have been sufficient to sustain the jury's verdict of guilty as to those counts,[28] under the *Glasser*[29] and *Warner*[30] standards of review. As a reverse twist of the concurrent sentence doctrine[31] and the fact that the case has to be retried, we do not further examine the sufficiency as to each count.[32] *Ben-*

---

**27.** We have recently had an opportunity to emphasize our intolerance of such "sandbagging" by defense counsel:

> "If the record indicates that counsel for the complaining party deliberately avoided making the proper objection or request, plain error will almost never be found. This court will not tolerate "sandbagging"—defense counsel lying in wait to spring post-trial error."

*United States v. Sisto,* 5 Cir., 1976, 534 F.2d 616, 624 n. 9. The record on this appeal contains no hint of "sandbagging" by defense counsel.

**28.** *See, e. g.,* Counts 9 and 15, *supra,* at note 17.

**29.** *Glasser v. United States,* 1942, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680.

**30.** *United States v. Warner,* 5 Cir., 1971, 441 F.2d 821.

**31.** Under the concurrent sentence doctrine (*see Benton v. Maryland,* 1969, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707), where "the sentences are concurrent sentences and adequacy of the proof with respect to any one of the counts would be sufficient to sustain the judgment of conviction and sentence, * * * it [is] unnecessary to ascertain whether proof

was adequate as to all [of the counts]." *United States v. Varner,* 5 Cir., 1971, 437 F.2d 1195. In *Benton v. Maryland, supra,* the Supreme Court determined that this doctrine is merely one of judicial convenience and does not pose a jurisdictional bar to any of the issues raised by the defendant. 395 U.S. at 791, 89 S.Ct. at 2061, 23 L.Ed.2d at 714; *see also United States v. Burrell,* 5 Cir., 1974, 505 F.2d 904, 906; *United States v. Bigham,* 5 Cir., 1970, 421 F.2d 1344, 1346.

**32.** *See Bryan v. United States,* 1950, 338 U.S. 552, 70 S.Ct. 317, 94 L.Ed. 335. Since a motion for new trial was filed, *United States v. Musquiz,* 5 Cir., 1971, 445 F.2d 963 does not prevent reversal for new trial.

Much is made before us of the failure of the Government to call both spouses to a joint return. For the retrial, we make no flat holding on this. The taxpayers' ultimate proper tax is not the question. The issue is the preparer's preparing a return which he knew to be fraudulent or containing matters which he knew to be false. It is possible in some situations, depending for example, on the testifying spouse's having or not having complete knowledge of domestic financial affairs, that the Government as a part of its burden has to call the other spouse to negative the receipt of critical information by the preparer from that person.

*ton v. Maryland,* 1969, 395 U.S. 784, at 791, 89 S.Ct. 2056, at 2061, 23 L.Ed.2d 707 at 714.

### More Hearsay

■ Defendant complains of the admission of certain evidence. In response to a request by the prosecutor, one of the count witnesses read from his prior statement, given under oath to an IRS agent: "I went to Mr. Brown because everyone else I knew were [sic] going to him and they were getting big refunds." R. IV at 122. Defendant complains that this was prejudicial hearsay and violated the defendant's right of confrontation and that the admission of this testimony was plain error. Under the F.R.Evid. 802 definition of hearsay, we agree with defendant's contention that this statement at least in part was hearsay.[33] The assertion for which the statement was offered to prove was that the defendant was getting big refunds for other people—a fact not shown by the statement to have been within the witness's knowledge. Although defendant did not object to the introduction of this testimony when it was introduced at trial, we have discussed it in the light of a new trial since standing alone

this would not elevate to a reversible plain error.

■ Defendant also claims that the District Court committed plain error in admitting evidence (without objection) of the fact that defendant refused to give certain information to an IRS Special Agent during an informal, non-custodial visit by the agent.[34] In *United States v. Hale,* 1975, 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 and in *Doyle v. Ohio,* 1976, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91, the Supreme Court labeled as error the prosecution's comment on defendant's *silence* during *custodial* interrogation, after defendant had been given his *Miranda* warnings. *Hale* grounded its opinion in the supervisory power of the Supreme Court over the lower federal courts. *Doyle* grounded its opinion in the Due Process clause of the Fourteenth Amendment. The Supreme Court's recent decision in *Beckwith v. United States,* 1976, 425 U.S. 341, 96 S.Ct. 1612, 48 L.Ed.2d 1, convinces us that the interrogation conducted in this case should not be considered a custodial interrogation, at least for the purpose of determining whether defendant's affirmative *statements* during a criminal tax investigation/interrogation could later

**33.** This statement does not come under any of the exceptions to the hearsay rule. It is not the recorded recollection of the *declarants,* for example. *See* F.R.Evid. 803(5). For the same reason, it does not fall into the F.R.Evid. 804(b)(1) exception of the former testimony of a *declarant.*

**34.** The Record shows that IRS Special Agents conducted three non-custodial interviews with defendant, on March 7, 1973, March 13, 1973, and September 4, 1973. R. I, at 19–22. During the direct examination of the Special Agent who had interviewed defendant in the March 7 interview, defendant, after having been read his Fifth Amendment rights (*see* note 32, *supra*) volunteered a considerable amount of information and also agreed to give the IRS a list of the persons for whom defendant had prepared tax returns in the past several years. R. IV, at 22–27. The Agent then described what occurred during the March 13 interview when he went back to get the list he had asked the defendant to prepare:

A And I went back over there the following Tuesday, and I spoke with Mr. Brown outside

the school from five, maybe ten minutes at the most. And he said he had been thinking about it since I had talked to him the preceding week, and he was sort of confused as what he was being charged with. And he had talked with his attorney, and he thought that maybe I had better talk with his attorney. He gave me his name and address. And I suggested that I would be getting in touch with him by telephone and set up an appointment. Which he suggested that be done at my convenience.

But in the meantime I never got around to that because I had retired shortly after that.

And that was about the extent of the conversation, which was very brief.

Q That was when you went back the following Tuesday?

A Yes, sir.

Q And you didn't get a list from him of that nature?

A No, sir. I couldn't get any information at all.

R. IV, at 26–27. This exchange forms the sole basis for defendant's Fifth Amendment argument.

be introduced into evidence against him. None of the three decisions, however, reveal whether it would be error, constitutional or otherwise, for a District Court to admit evidence of defendant's *silence* or express refusal to answer on Fifth Amendment grounds during a non-custodial criminal tax investigation/interrogation. An additional complicating factor is the *Miranda*-like statement given by the IRS Special Agent prior to the non-custodial interview.[35] In light of our disposition of this case on other grounds, we need not enter this particular legal thicket. This is especially so in the light of the impending new trial at which this marginally probative testimony with its built-in risks—constitutional, fairness, prejudice—will not likely be offered.

### Ineffective Assistance Of Counsel

Defendant argues that he was denied reasonably effective assistance of counsel and that his conviction should be reversed for that reason. In light of the fact that we are vacating defendant's conviction and remanding for a new trial on other and ample grounds, we need not and do not pass on this. It is evident from the quality of his performance here and on argument that his present counsel will leave no stone unturned. Indeed he will probably construct some new ones.

The judgment of conviction against defendant is reversed, and the case remanded for new trial on all counts.

REVERSED and REMANDED.

GEE, Circuit Judge, dissenting:

Convinced that admission of Agent Peacock's testimony—if error at all—is not plain error, I respectfully dissent.

As the majority acknowledges, a reversal such as this for an error not raised below turns on the facts of the particular case. *United States v. Morales*, 477 F.2d 1309 (5th Cir. 1973). The record before us reveals that the government originally had no intention to call Agent Peacock as a witness or to introduce evidence of erroneous tax returns other than the 17 contained in the indictment. Defense counsel, however, inadvertently opened the door to the challenged evidence by eliciting on cross-examination of IRS Agent Barnett the information that 163 returns prepared by appellant had been audited. As the trial court recognized, this evidence of 163 audited returns—without explanation of the audit results—could give rise to the inference and defense argument that out of more than 160 returns prepared by appellant Brown only 17 had contained innocent "errors" of overstated deductions.

Defense counsel suggested that the court could "re-bag the cat" let loose by his cross-examination of Agent Barnett by granting an unopposed government motion to strike the testimony concerning the 163 audited returns. The trial judge recognized the futility of instructing the jury to disregard this damaging evidence; and he accepted instead the government's suggestion, *without any objection from appellant*, that the

**35.** Prior to asking defendant any questions, the IRS Special Agent read verbatim the following statement to defendant:

"As a special agent, one of my functions is to investigate the possibility of criminal violations of the Internal Revenue laws and related offenses. In connection with my investigation of your tax liability or other matter I would like to ask you some questions. However, first, I must advise you that under the Fifth Amendment to the Constitution of the United States I can't compel you to answer any question or to submit any information if such answers or information might tend to incriminate you in any way. I also advise you that anything which

you say or any information you submit may be used against you in any criminal proceeding which may be undertaken. I advise you further that you may, if you wish, seek the assistance of an attorney before responding. Do you understand these rights?"

"However, you may waive the right to seek the assistance of an attorney before responding. You may also voluntarily answer questions or submit information at this time if you so desire."

R. IV, at 23–24. Parenthetically, it should be noted that almost the identical statement was involved in *Beckwith, supra*, 425 U.S. at 343, 96 S.Ct. at 1614, 48 L.Ed.2d at 5.

IRS auditor be questioned to determine what percentage of the 163 returns had actually been found to contain overstated deductions. Agent Adrienne Peacock, learning only an hour or two before she was called to the stand that she would testify, had no chance to obtain and review the relevant tax returns. Testifying from her best recollection, Peacock related that she had personally audited all but two or three of the 163 returns prepared by appellant Brown and reviewed by the IRS. Of those returns that she audited, between 90 and 95 percent had contained substantially overstated itemized deductions. As a result of disallowed deductions the IRS had assessed additional taxes totalling $50,856, an average of $312 per taxpayer. At the close of Peacock's testimony the court instructed the jury to consider it only on the issue of appellant's intent.[1]

Testifying in his own defense, appellant Brown denied that he had knowingly or willfully prepared any false returns. He did not, however, deny that he had prepared tax returns for others or that many of those tax returns had contained overstated deductions ultimately disallowed by IRS. And neither he nor any other witness challenged the accuracy of Agent Peacock's testimony concerning the number of audited returns Brown had prepared or the approximate percentage of those returns found to contain overstated, disallowed deductions.

The majority declares, however, that Peacock's testimony concerning unindicted tax returns was inadmissible for two reasons: (1) her testimony constituted hearsay, and (2) it failed to meet the requirements of Federal Evidence Rules 403 and 404(b) as "[e]vidence of other crimes, wrongs or acts . . . .."[2] Thus, in spite of the government's need for the evidence, its clear relevance to establishing appellant's intent, and

the judge's instruction limiting its admissibility to the intent issue, the majority holds that admitting Peacock's evidence was a plain error so adversely affecting appellant's substantial rights that reversal is required even absent a timely objection—or even an untimely one—by defendant in the court below.

Because I disagree that Peacock's testimony constituted hearsay or that it so violated standards of admissibility for other-offense evidence as to amount to plain error, I cannot join in reversing appellant's conviction on the grounds enunciated by the majority.

### Hearsay

The majority's characterization of Agent Peacock's testimony as "hearsay" represents an unprecedented departure from usual hearsay concepts. F.R.Evid. 801 defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Agent Peacock's statements at trial were (1) that she personally audited all but two or three of the 163 tax returns prepared by appellant and audited by IRS, and (2) that her audit had determined that 90 to 95 percent of those returns contained overstated itemized deductions disallowed under IRS standards. Agent Peacock obviously testified from her own personal knowledge about the results of tax audits she conducted. In her testimony she neither related nor relied upon out-of-court statements by other persons.

It is too plain for argument that Peacock's testimony as to what she knew herself from the returns she individually audited does not fall within Rule 801's hearsay definition. An examination of the record reveals that *all* of Peacock's testimony was

---

**1.** *See* n. 16 of majority opinion for judge's instruction.

**2.** As we shall shortly see, however, the two reasons are in fact one. The opinion simply

declares that before matter can meet the requirements of Rule 404(b) it must be "evidence," and that Peacock's testimony is not evidence because it is hearsay.

based on knowledge she personally acquired while auditing the tax returns prepared by Brown. In fact, the majority points to no *statement* whatever by Agent Peacock which it claims contains hearsay; she mentioned no statements others had made to her during the course of her audit. The majority objects, however, that Agent Peacock's audit necessarily rested on " 'proof' of the overstatements through conversations with each of the taxpayers audited." [3] Since her testimony had to have been based directly on the out-of-court statements of these taxpayers who could not be cross-examined, it is said that "a clearer case of hearsay testimony would be difficult to imagine." [4] I find little difficulty in doing so.

In the first place, the taxpayer statements made to Agent Peacock probably were *themselves* admissible in evidence. A taxpayer declares to a revenue agent that his deductions are overstated (and his tax should therefore be higher). Probably most would agree that this is a declaration against the taxpayer's interest. As such, it is, if the declarant be "unavailable," admissible under Federal Evidence Rule 804(b)(3):

> Statement against interest. A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable man in his position would not have made the statement unless he believed it to be true.

And in the circumstances of this case, the 150 taxpayer declarants were likely "unavailable," in any practical sense, within the intendment of Rule 804(a)(5).

In the second place, Agent Peacock's testimony was that of an auditor, an expert in her line of work. If the majority opinion be right, here is an end of such expert testimony by auditors, accountants and similar professionals as to the results of audits, ascertainments of financial conditions, etc. But it is not, for Federal Evidence Rule 703 explicitly treats the matter of opinions based on inadmissible data:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

And the Advisory Committee's Note makes plain that Agent Peacock's testimony is the type which the Rule contemplates:

> Facts or data upon which expert opinions are based may, under the rule, be derived from three possible sources. The first is the firsthand observation of the witness, with opinions based thereon traditionally allowed. A treating physician affords an example. . . . The third source contemplated by the rule consists of presentation of data to the expert outside of court and other than by his own perception. In this respect the rule is designed to broaden the basis for expert opinions beyond that current in many jurisdictions and to bring the judicial practice into line with the practice of the experts themselves when not in court. Thus a physician in his own practice bases his diagnosis on information from numerous sources and of considerable variety, including statements by patients and rel-

---

**3.** *See* note 13, *supra.*

**4.** *See* majority opinion at 1205. Where also, in note 19, Professor Morgan's rhetorical question is quoted: "[S]hould we not recognize that the rational basis for the hearsay classification is not the formula, 'assertions offered for the

truth of the matter asserted' . . . .."? To me, it is moderately clear that we should not, in view of Rule 801's definition of hearsay as out-of-court statements "offered in evidence to prove the truth of the matter asserted." F.R. Evid. 801.

atives, reports and opinions from nurses, technicians and other doctors, hospital records, and X rays. Most of them are admissible in evidence, but only with the expenditure of substantial time in producing and examining various authenticating witnesses. The physician makes life-and-death decisions in reliance upon them. His validation, expertly performed and subject to cross-examination, ought to suffice for judicial purposes. Rheingold, *supra*, at 531; McCormick § 15. A similar provision is California Evidence Code § 801(b).

Writing as though Rule 703 did not exist, the majority today fashions a new category of inadmissible evidence: *implied* hearsay. I can find no justification for this new creation in either policy or precedent and thus dissent from the finding that Agent Peacock's testimony constituted hearsay inadmissible at appellant's trial.

### Broadway and the Rules

As an alternative ground for excluding Agent Peacock's testimony, the majority purports to rely on the new rules of evidence and on this court's holding in *United States v. Broadway, supra,* that proof of other offenses, to be admitted at trial, must be "plain, clear, and conclusive." In fact, however, the reasoning executes a simple circle: to be admissible as "evidence" of other crimes, wrongs and acts, matter must first be "evidence"; hearsay is not "evidence"; *ergo,* since Agent Peacock's testimony is not evidence, it is not evidence of other crimes, etc. Thus, *Broadway* and the rules are dragged in by the heels; one might as well have said that since courts hear only evidence, and this is not evidence, it will not be heard. As I think the rules have displaced *Broadway* entirely and that under them the matter is admissible, I take respectful leave briefly to say why.

Rules 403 and 404(b) deal with the admissibility of "other crimes" evidence and the exclusion of otherwise relevant and admissible evidence to avoid undue prejudice. F.R.Evid. 403 provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

F.R.Evid. 404(b) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The legislative history of Rule 404(b)'s treatment of other-offense evidence clearly reveals a congressional preference for admitting evidence of other acts, crimes, or wrongs when relevant for one of the listed purposes. In explaining a change in wording for Rule 404(b), the Report of the House Committee on the Judiciary observed:

The second sentence of Rule 404(b) as submitted to the Congress began with the words "This subdivision does not exclude the evidence when offered." The Committee amended this language to read "It may, however, be admissible", the words used in the 1971 Advisory Committee draft, on the ground that this formulation *properly placed greater emphasis on admissibility* than did the final Court version.

1974 U.S.Code Cong. & Admin.News pp. 7075–7081 (emphasis added). The Report of the Senate Committee expresses the view that Rule 404(b) carefully circumscribes the judge's discretion to *exclude* relevant other-crimes evidence:

Although your committee see no necessity in amending the rule itself, it anticipates that the use of the discretionary word "may" with respect to the admissibility of evidence of crimes, wrongs, or acts is not intended to confer any arbi-

trary discretion on the trial judges. Rather, it is anticipated that with respect to permissible uses for such evidence, the trial judge may exclude it *only* on the basis of those considerations set forth in Rule 403, i. e. prejudice, confusion or waste of time.

1974 U.S.Code Cong. & Admin.News pp. 7051, 7071 (emphasis added). Thus, *Broadway's* hostility toward admission of such evidence is—or is supposed to be—replaced by Congress' hospitality and receptive view toward it.

The Advisory Committee Note to Rule 404(b) leaves no doubt that the admissibility of other-offense evidence should be determined by reference to Rule 403's balancing test of prejudice against probativeness:

> No mechanical solution is offered. The determination must be made whether the danger of undue prejudice outweighs the probative value of the evidence in view of the availability of other means of proof and other facts appropriate for making decisions of this kind under Rule 403.

And the language of Rule 403 itself requires tilting the scales in favor of admissibility, sanctioning exclusion only when probativeness is *substantially* outweighed by prejudice.

Agent Peacock's testimony that she had found overstated deductions in 90 to 95 percent of the 163 tax returns prepared by appellant was clearly admissible under Rule 404(b) as tending to show appellant's willful intent and the absence of mistake or accident in his preparation of the indicted returns.[5] Relevant and admissible under Rule 404(b), the evidence could properly be excluded under Rule 403 only if the trial judge found that "its probative value is *substantially* outweighed by the danger of unfair prejudice." Even if appellant Brown had objected below to admission of Peacock's testimony, I would be reluctant to find that the trial judge abused the discretion given him in Rule 403 by finding that the probative value of the Peacock evidence was *not* substantially outweighed by danger of unfair prejudice.

Agent Peacock's evidence was both necessary and highly probative on the crucial disputed issue of appellant's intent. Her unchallenged testimony that 90 to 95 percent of the more than 160 returns prepared by appellant Brown contained overstated deductions certainly tended to rebut Brown's defense that he had not intentionally inflated deductions, implying instead that overstatements resulted from mistakes or erroneous information from taxpayers. The government's acute need for Peacock's testimony was created entirely by defense counsel when he brought out on cross-examination of a government witness the audit of 163 returns appellant had prepared. Peacock's explanation of the audit results thus abruptly became necessary to forestall the defense argument that only 17 of 163 returns contained mistakes of overstated deductions.

The dangers of unfair prejudice to defendant from Peacock's testimony are minimal. Proof that appellant on other occasions prepared income tax returns with

5. *See, e. g., United States v. King,* 505 F.2d 602, 610 (5th Cir. 1974) ("The admission of . . . evidence [of similar acts] is highly relevant where, as here, there has been a repetition of fraudulent dealings such as to indicate a great improbability of ignorance or innocent intent."); *United States v. Tunnell,* 481 F.2d 149 (5th Cir. 1973) (in trial for willful evasion of taxes, consistent pattern of understanding large amounts of income couples with evidence of inadequate records kept by the taxpayer permits inference of willfulness); *United States v. Jernigan,* 411 F.2d 471, 472 (5th Cir. 1969) ("Proof of this repetitious conduct was admissible for the limited purpose of showing the intent of the appellant, where, otherwise it might be claimed that the acts in the tax years were either inadvertent or innocent."); *Escobar v. United States,* 388 F.2d 661 (5th Cir. 1967) (in prosecution of attorney experienced in tax field for willfully making and subscribing false tax returns, evidence that taxpayer understated his income by almost one-half for four consecutive years is relevant and admissible on issue of willfulness).

overstated deductions is not the type of other-crimes evidence that appeals unduly to the emotions and prejudice of a jury, as would evidence of more opprobrious "other crimes" such as drug trafficking or armed robbery. As noted by the majority, the simple overstatement of allowable deductions on a tax return may occur in several quite innocent ways: misinformation from the taxpayer, an honest dispute with IRS, mistake, or a paucity of records to substantiate the deductions. The degree and possibility of undue prejudice from Peacock's testimony is thus lessened considerably by the numerous innocent explanations for overstated deductions. Applying Rule 403's balancing test to the particular facts of this case, I simply cannot conclude that the necessity and probative value of Peacock's evidence was substantially outweighed by the possibility of unfair prejudice to defendant so as to make admission of her testimony an error—much less a plain error requiring reversal even without timely objection below.

Even assuming, as I do not believe, that *United States v. Broadway's* "plain, clear, and conclusive" standard retains some vitality as a kind of pre-existing judicial gloss on Rules 403 and 404(b),[6] I am unable to agree with the majority that the Peacock testimony falls so short of the *Broadway* standard as to make its admission plain error. An examination of the purpose and application of the *Broadway* rule reveals that it is not designed to exclude credible and undisputed evidence of other similar acts like that given by Agent Peacock in the instant case.

The *Broadway* court, fearful of the possibility of prejudice inherent in allegations that defendant had committed other offenses similar to those charged, established the rule in this circuit that the government could not merely intimate that defendant had committed other similar crimes. Evidence tending to show similar offenses would be excluded unless the government could clearly prove that defendant had committed acts similar to those charged:

> Our holding is simply that when proof of an assertedly similar offense is tendered to establish necessary intent, the other offense proved must include the essential physical elements of the offense charged, and these physical elements, but not the mental ingredients of the offenses must be clearly shown by competent evidence.

477 F.2d at 995.

The essential physical elements of the offense charged in the instant case are established by showing (1) that Brown assisted in the preparation or presentation of tax returns and (2) that those returns were false as to a material matter.[7] These are exactly the physical elements proved by Agent Peacock's undisputed testimony: (1) appellant Brown had assisted in the preparation and presentation to IRS of more than 160 tax returns; and (2) 90 to 95 percent of those returns audited by Agent Peacock were determined to be false as to the material matter of allowable deductions. Moreover, I can find nothing in the case law of this circuit to support the majority's use of *Broadway* to screen out the kind of evidence Peacock gave. The *Broadway* opinion itself gives little guidance on

---

**6.** In the recent case of *United States v. Bloom*, 538 F.2d 704 (5th Cir. 1976), another panel of this court treated as still applicable pre-Rules cases announcing particular standards for admissibility of other-offense evidence. These cases undoubtedly will continue to serve as valuable guides to the factors to be considered in weighing probativeness against prejudice. However, no single factor can be determinative of admissibility; Rule 403 makes clear that all factors are to be thrown into the scales to assist in the decisive test of whether unfair prejudice substantially outweighs probative-

ness. In fact many recent pre-Rules cases—though considering particular admissibility criteria for other-offense evidence, such as remoteness in time, need for evidence, and the *Broadway* rule—applied a balancing test similar to Rule 403's to determine admissibility. *E. g., United States v. Simmons*, 503 F.2d 831 (5th Cir. 1974); *United States v. Silvas*, 483 F.2d 1392 (5th Cir. 1973); *United States v. Goldsmith*, 483 F.2d 441 (5th Cir. 1973); *United States v. Calles*, 482 F.2d 1155 (5th Cir. 1973).

**7.** 26 U.S.C.A. § 7206(2).

how to apply its "plain, clear and conclusive" standard, because the reversal in *Broadway* turned on the lack of sufficient *similarity* between the offense charged and the other acts alleged.[8] One of the Eighth Circuit cases cited with approval in *Broadway*, however, sheds some light on the type of other-offense evidence which, under its superceded test, should be excluded as too vague and uncertain. In *Kraft v. United States*, 238 F.2d 794 (8th Cir. 1956), defendant was charged with a scheme to defraud by inducing persons to send him money in anticipation of receiving "rare geraniums" as advertised in several newspapers. Kraft defended against the charge by denying that he had possessed the requisite criminal intent to defraud. To help show his fraudulent intentions the government introduced—and the court admitted over defendant's objection—39 letters sent in 1950 from the Minneapolis *Tribune* to defendant when he had been operating a mail-order tulip venture. The letters intimated that defendant had been dilatory in making refunds or delivering bulbs as advertised in the *Tribune*. The Eighth Circuit ruled that the letters should have been excluded because they constituted "mere accusations of some other offense," rather than the kind of "plain, clear, and conclusive" proof requisite for admission of other-offense evidence. 238 F.2d at 802.

Since announcing the *Broadway* proof standard for other-crimes evidence, this court has only once found challenged evidence to be insufficiently "plain, clear, and convincing." In *United States v. Vosper* 493 F.2d 433 (5th Cir. 1974), defendant was charged with participating in a bank robbery, which had actually been carried out by another man, Blanton Lynn. To help establish a relationship between Vosper and Lynn, an FBI agent testified that he had seen the two together approximately five weeks before the robbery when he had them under surveillance for *suspicion* of other robberies. Not surprisingly, the *Vosper* court held that, if offered to prove similar crimes, the agent's reference to other robberies was deficient under *Broadway's* "plain, clear, and conclusive" test.

*Kraft* and *Vosper* contain classic illustrations of the type of unreliable, unsubstantiated intimations or accusations of other crimes that the *Broadway* rule was designed to exclude. The five-year-old complaint letters in *Kraft* and the reference to "suspicion" of other robberies in *Vosper* carried little probative weight, yet injected into the defendants' trials the highly prejudicial implication of previous similar criminal activities.

Recent cases in this circuit in which challenged other-offense evidence was admitted despite the *Broadway* test consult the reliability of the evidence and the certainty that other similar acts have, in fact, been committed by defendant. For example, in *United States v. Pollard*, 509 F.2d 601 (5th Cir. 1975), *cert. denied*, 421 U.S. 1013, 95 S.Ct. 2419, 44 L.Ed.2d 681 (1976), defendant was charged with robbing an Atlanta bank by "till tapping."[9] An FBI agent testified that Pollard said that he had also participated in five or six California larcenies in October and November of 1973 (subsequent to the Atlanta robbery) using the same till tapping technique. The trial judge carefully instructed the jury to consider this testimony only on the issue of defendant's guilty knowledge or intent. This evidence given by the FBI agent that defendant had participated in "five or six" California robberies in "October and November of 1973" lacked details of the crimes such as the names of the victimized banks, the dates of each robbery, and the exact amounts stolen. Nevertheless, the *Pollard* court in an opinion by Judge Simpson, who also authored

---

8. Similarly, the only previous Fifth Circuit case cited by the *Broadway* court for the proposition that proof of other offenses must be clear and convincing had also turned on an insufficient *similarity* of the other offenses, rather than insufficient proof. *Labiosa v. Government of Canal Zone*, 198 F.2d 282 (5th Cir. 1952).

9. Defendant Pollard explained this technique as having an accomplice divert a bank teller's attention while he reached over the counter and took currency from the cash drawer. 509 F.2d at 604 n. 1.

the *Broadway* opinion, found the agent's testimony to meet all requisites for admission of other-offense evidence.

In *United States v. Bloom,* 538 F.2d 704 (5th Cir. 1976), defendant was charged with possessing with intent to distribute and with distributing heroin. Over defense objections to evidence of uncharged drug trafficking, government undercover agents testifying about their dealings with defendant indicated that their discussions with defendant had involved cocaine as well as heroin, that defendant had also been engaged in procuring and marketing marijuana, and that defendant had had considerable prior experience in procuring Mexican heroin for prospective buyers. The panel, in an opinion by Judge Ainsworth, specifically held that the undercover agents' "extrinsic evidence of heroin, cocaine and marijuana dealings was 'plain, clear, and convincing.' " 538 F.2d at 709.[10] Thus, the court's conclusion that the other-offense evidence met the *Broadway* standard must have turned upon the credibility of the witnesses, the reliability of the source of their testimony (i. e., the defendant himself), and the clear and convincing nature of their testimony about their dealings with defendant, in which he had revealed his involvement with other drug transactions.

The testimony of IRS Agent Peacock in the instant case was at least as detailed as the evidence in *Pollard* and was far more specific than the testimony in *Bloom.* Her evidence of tax audit results, undisputed and unimpeached by defendant, clearly established that a number of materially false tax returns had been presented to IRS and that defendant had assisted in the preparation of those returns.[11] In light of the purpose of the *Broadway* rule and its previous application by this court, I would hold, if required to do so, that Peacock's testimony was sufficiently "plain, clear, and conclusive" to be properly admissible at appellant's trial under the *Broadway* standard, as well as under the Federal Rules of Evidence balancing test.

*Plain Error?*

Whether an error rises to the magnitude of plain error, justifying reversal even absent a timely trial objection, calls for subjective judgments on questions of fairness and prejudice which inherently involve considerable latitude for defensible differences of judicial opinion. I have already registered my strong disagreement with my brothers' conclusion that the error, if any, in admitting Peacock's testimony was "obvious and manifest" and "severely prejudicial to the defendant." [12] To further belabor my arguments on these points would profit little. However, beyond my disagreement with the grounds and significance of the errors discovered by the majority, I am gravely disturbed by the application of the plain error rule to the particular facts of this case. A consideration of the practical ramifications of the holding will, I think, illustrate the grounds for my concern.

Even the majority's opinion leaves no doubt that the government may properly

---

**10.** Although in a special concurrence the other panel members, Judges Tuttle and Clark, disagreed with Judge Ainsworth that a substantial need for the extrinsic evidence existed, they took no exception to his finding that the evidence was sufficiently "plain, clear, and convincing." 538 F.2d at 711.

**11.** *Cf. United States v. Cavallino,* 498 F.2d 1200 (5th Cir. 1974), holding other-offense evidence to be "plain, clear, and conclusive" when facts of bank robberies and of defendant's participation in them were clearly established.

**12.** Majority opinion at 1208.

One of the reasons that the majority gives for finding Peacock's testimony "severely prejudicial" is the alleged weakness of other evidence to show appellant's guilty intent. The majority intimates that the evidence of appellant's guilty intentions was so weak that he probably would not have been convicted without the testimony of Agent Peacock. On the contrary, the indicted returns themselves established a clear pattern of substantially overstated deductions for medical insurance premiums, interest payments, and church contributions, as well as several instances of apparently purely fabricated casualty losses. *See* summary of count witnesses' testimony in note 17 of majority opin-

introduce, on the disputed issue of appellant's intent, evidence of other unindicted tax returns prepared by him which also contain overstated deductions. Apparently, both the hearsay and *Broadway* defects in Peacock's testimony could have been cured to the majority's satisfaction by introducing the unindicted tax returns and by calling each of the 145 taxpayers involved to testify about the amounts of overstated deductions and the reasons for disallowance.[13] It is difficult for me to believe that defendant's case would have been less damaged by the suggested introduction and explanation one by one of more than 145 erroneous tax returns prepared by appellant.[14] Although the majority claims to find no evidence of intentional "sandbagging" in this case, it seems quite reasonable to me that defense counsel—if alerted by the court to possible hearsay or *Broadway* objections—would probably have chosen to accept the summary of admissible proof given by Agent Peacock, rather than insisting upon the introduction and explication of 145 individual vignettes of damning evidence.

In cases such as this where defendant's commission of similar acts is essentially undisputed and easily provable in detail by the government, the accused may understandably wish to *avoid,* rather than to encourage, the introduction of "plain, clear, and conclusive" proof of the details of all his other "crimes." We must bear in mind that

*Broadway* was intended as a shield to protect defendants from vague and unsubstantiated accusations of other offenses. If a defendant chooses (or even neglects) to invoke the shield's protection at trial, he should not then be allowed to use the *Broadway* rule as an appellate sword to extract from this court reversal of his conviction for noncompliance with an evidentiary standard he will no doubt decline to enforce on retrial.

For example, if the government in a new trial of appellant attempts to introduce detailed testimony on more than 145 erroneous tax returns, a wise defense counsel will likely interpose an objection to the cumulative and time-consuming nature of the evidence and simply offer to stipulate the number of tax returns prepared by appellant which contained overstated deductions. Thus, if defendant's objection is sustained, the government's other-offense evidence at retrial would probably be that appellant Brown prepared 163 tax returns audited by IRS, and 146 of those returns contained substantially overstated deductions. Requiring a retrial of the entire cause in order to obtain such a slight transmogrification in the government's other-crimes evidence seems a patently unproductive use of judicial resources.

Furthermore, this is not a case in which the *substance* of the government's chal-

---

ion. Even more damaging count witnesses for six of the twelve counts on which defendant was convicted testified to particular instances in which they had given defendant specific amounts for deductible expenses which were substantially less than the amounts defendant had recorded on their tax returns. See summary of count witnesses' testimony under Counts 3, 7, 8, 9, 10 and 15 in note 17 of majority opinion. One of these witnesses (Edward A. Leeks, Count 9) had given defendant a sheet of paper listing the amounts of particular expenses, while another witness (Robert A. Sims, Count 15) had given defendant the receipts for his mortgage interest payments.

The consistent pattern of overstatement coupled with direct taxpayer testimony that defendant had entered deductions considerably in excess of the specific amounts given him con-

stitutes, to my mind at least, fairly persuasive and convincing proof of Brown's guilty intent even absent the Peacock testimony.

**13.** The majority emphasizes the importance of knowing the IRS "reason" for disallowance of deductions. As a practical matter, the reason for disallowance will usually be that the taxpayer was simply unable to substantiate the claimed deductions with adequate records. Thus, the reason for disallowance will generally have little probative worth in determining the "reason for overstatement," which is the relevant inquiry in determining appellant's intent.

**14.** Agent Peacock testified that 90 to 95 percent of the 163 audited returns contained inflated deductions; 90 percent of 163 would be about 146 returns.

lenged evidence was wholly inadmissible under any circumstances. When a defendant's conviction seems to have been substantially affected by such clearly inappropriate evidence, the plain error rule exists to rescue him from the unfair conviction even absent a proper trial objection. In the instant case, however, the subject and substance of the government's other-offense evidence was properly admissible on the issue of appellant Brown's intent; the majority objects only to the *form* which the evidence took, specifically, its alleged hearsay character. The plain error rule was simply not designed to reverse otherwise proper convictions for mere technical evidentiary defects when no objection to the defects was raised below. A successful objection at trial would not have protected the instant defendant from admission of the highly probative other-offense evidence offered by Agent Peacock; it would have simply required the government to alter slightly its manner of proof. Thus, it is difficult to understand how this easily correctible defect in the form of admissible proof could have so prejudiced defendant as to make his conviction unfair.

Because the admission of Peacock's testimony in the form she gave it, if error, was not a plain error substantially prejudicing defendant or leading to his conviction on wholly improper evidence, and because the majority's rulings in this appeal are unlikely to alter significantly either the conduct or the outcome of another trial, I find application of the plain error rule disturbingly inappropriate to the facts of this case. Thus, I vigorously dissent from the reversal of appellant's conviction on the ground that

15. I would not, however, deny appellant Brown all relief. His motion for new trial, supported with affidavits, raised serious allegations of jury misconduct. Specifically, he claimed that one of the principal prosecution witnesses had engaged during the trial in a private conversation with one of the jurors (to whom the witness was related by marriage) and that one of the jurors had been subjected to improper pres-

admission of the Peacock evidence constituted a plain error.[15]

sures to reach a verdict during the deliberations.

The court below failed to conduct a "full investigation" into the alleged misconduct and its effect as required by *United States v. McKinney,* 429 F.2d 1019 (5th Cir. 1970). I would, therefore, remand the case for proper inquiry into the allegations of jury misconduct.