[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 18-12336
Non-Argument Calendar

————————————————

D.C. Docket No. 9:17-cr-80187-RLR-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MANUEL ANTONIO SEVERINO,

Defendant-Appellant.

————————————————

Appeal from the United States District Court
for the Southern District of Florida

————————————————

(September 3, 2019)

Before MARTIN, NEWSOM, and GRANT, Circuit Judges.

PER CURIAM:

Manuel Antonio Severino appeals his convictions and 65-month sentence for aiding and assisting in the preparation of false tax returns, wire fraud, and aggravated identity theft. The district court did not abuse its discretion in declining to give the additional willfulness instruction requested by Severino because that instruction was subsumed by the offense instruction given. In addition, the evidence was sufficient to support Severino's convictions, and the court did not abuse its discretion in weighing the 18 U.S.C. § 3553(a) factors or rely on any improper factor in imposing sentence. We therefore affirm.

I.

Severino proceeded to a jury trial on all 17 counts of a superseding indictment charging him with: 13 counts of aiding and assisting in the preparation of false tax returns, in violation of 26 U.S.C. § 7206(2) and 18 U.S.C. § 2 (Counts 1–13); 2 counts of wire fraud, in violation of 18 U.S.C. §§ 1343 and 2 (Counts 14–15); and 2 counts of aggravated identity theft against "J.LM." and "K.M" (later identified as Kenneth Mestre), in violation of 18 U.S.C. §§ 1028A(a)(1) and 2, (Counts 16–17).

At trial, the government called an expert witness and Internal Revenue Service agent who testified, in relevant part, that the American Opportunity Credit is a tax credit that applies to qualified post-secondary education expenses. The agent explained that a Form 1098-T issued by the educational institution is used to

verify the credit and prevent fraud. He further stated that in claiming the American Opportunity Credit, the education expenses had to be paid in the same tax year for which the credit was claimed and that a Form 8863 was supposed to be attached to the tax return. The Form 8863 required the name of the student and the educational institution that they attended, as well as the amount of expenses based on the 1098-T.

The government later called an investigative analyst for the IRS, who testified that 452 tax returns, unsigned by any preparer, had come from two IP addresses linked to Severino; later testimony tied the IPs to Severino's residential address. Of the 452 unsigned returns, 388 claimed the American Opportunity Credit, but only 14 had a corresponding 1098-T. The analyst stated that this was much higher than the ordinary proportion of returns claiming the credit.

In addition, the government offered testimony from four individuals whose tax returns were the subject of the § 7206(2) counts; each testified that Severino had prepared the returns on their behalf. The 2014 and 2015 returns that Severino prepared for Nidia Sierra both claimed the American Opportunity Credit based on expenses that Sierra had allegedly incurred in nursing school, but Sierra testified that she had not attended school or spent money on education, and that she had not told Severino that she had done so. Similarly, the 2013 return that Severino prepared for Raul Mendoza claimed the American Opportunity Credit based on his

3

attending a particular college, but Mendoza testified that he had not attended that college in 2013 or told Severino that he had. The 2014 return Severino prepared for Jorge Oviedo likewise claimed an educational credit on behalf of J.L.M., who was listed as Oviedo's dependent niece and whose Social Security number was provided. But Oviedo testified that he did not know J.L.M., tell Severino that J.L.M. was his niece, provide J.L.M.'s Social Security number, or tell Severino that he had incurred any of the claimed expenses. Finally, the 2013–2015 tax returns that Severino prepared for Rita Alicia Llerena claimed the American Opportunity Credit based on her attending a school called Medvance, but Llerena testified that she had not attended that school in those years or told Severino that she had done so. Llerena also testified that 2013–2015 tax returns that Severino had prepared for her adult daughter and son-in-law falsely claimed educational credits on their behalf. She further testified that on her 2015 tax return, Severino had listed her adult son, Mestre, as a dependent, even though she had asked him not to.

Though J.L.M. did not testify, Mestre did. On the tax returns of an individual named Hugh Parks, Mestre was listed as Parks's dependent nephew and Mestre's Social Security number was also provided. Mestre testified that he had not authorized Severino to use his Social Security number, that he did not know

4

Parks, and that Parks was not his uncle.  He also testified that he was not aware that he was listed as a dependent on his mother's 2015 return.

Severino moved for a judgment of acquittal on all counts, contending in part that there was no evidence that he had breached any known legal duty with respect to the § 7206(2) counts; that there was insufficient evidence of a scheme to defraud with respect to the wire fraud counts; and that there was insufficient evidence that he had inputted the information on the returns with respect to the wire fraud and aggravated identity theft counts.  The district court denied the motion, and Severino did not present a defense.

Severino asked the court to provide the willfulness instruction listed in Basic Instruction 9.1B of this Court's Pattern Jury Instructions, which refers to the "violation of a known legal duty."  Severino noted, however, that the commentary to the pattern instruction for 26 U.S.C. § 7206(2) appeared to indicate that instruction B9.1B was "not specifically required and may be subsumed . . . by the standard instruction."  The court denied the request for the B9.1B instruction, concluding that it usually applied in cases involving complex tax issues.  It ultimately issued an offense instruction stating, in part, that it is a federal crime "to willfully aid or assist to prepare under the Internal Revenue laws a document that is false or fraudulent as to any material matter," and that the government must show that the defendant acted "with the intent to do something the defendant knew

5

the law forbids." The court also issued an instruction stating that "willfully" means that an act "was committed voluntarily and purposely, with the intent to do something the law forbids; that is, with the bad purpose to disobey or disregard the law." This instruction also stated that although a defendant must act with intent to do something the law forbids, he "need not be aware of the specific law or rule that his conduct may be violating."

The jury convicted Severino on all 17 counts. The presentence investigation report ("PSI") assigned Severino zero criminal history points. Based on his total offense level of 20 and criminal history category of I, the recommended guideline range was 33 to 41 months, plus two years consecutive for the aggravated identity theft counts. The PSI also mentioned that Severino had grown up in poverty in the Dominican Republic, had dropped out of school, and had become a U.S. citizen.

At sentencing, the government argued for a sentence of 41 months plus two years, noting that Severino had engaged in tax fraud for five years, had caused over $500,000 in loss for the electronic returns filed from 2013–2015, and had not accepted responsibility. The government also argued that Severino had exploited people who trusted him, and who did not speak fluent English or otherwise understand the tax preparation process. The court interjected that deterrence was a "major factor," and that Severino's was "one of the most unsophisticated tax frauds" it had seen.

Severino argued for a sentence of 33 months plus two years, noting his lack of criminal history. The court responded that Severino's lack of criminal history was "not taken into account" because if he had such a history, his guideline range would be higher. The court also noted Severino's lack of remorse, observed that he had engaged in "blatant thievery," and again emphasized deterrence. The court stated that Severino's conduct "paint[ed] a terrible picture" and that "this apparently is going on in the communities out there." When invited by the court to discuss a factor in his favor, Severino responded that he had come to the United States from poverty at the age of 18. Though the court acknowledged that Severino was hardworking and dedicated to his family, it went on to state that after choosing to become a U.S. citizen, he had violated U.S. laws.

The court stated that it had considered the 18 U.S.C. § 3553(a) factors, the parties' arguments, and the PSI, noting that the duration of the conduct, the amount of loss, deterrence, and lack of remorse were important considerations. With respect to deterrence, the court stated that "[a]pparently, these people don't care about this," but that they "need[ed] to care" because Severino's conduct undermined the tax system. The court ultimately sentenced Severino to a term of 41 months' imprisonment plus two years.

## II.

7

We review a failure to give a requested jury instruction for abuse of discretion, which occurs only where the requested instruction: "(1) was correct; (2) was not substantially covered by a charge actually given; and (3) dealt with some point in the trial so important that failure to give the requested instruction seriously impaired the defendant's ability to conduct his defense." *United States v. House*, 684 F.3d 1173, 1196 (11th Cir. 2012) (citation omitted). "Jury instructions are subject to harmless error review." *Id.* (quoting *United States v. Webb*, 655 F.3d 1238, 1249 n.8 (11th Cir. 2011)). An error is harmless if we are satisfied "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Id.* (citation omitted). "District courts have broad discretion in formulating jury instructions provided that the charge as a whole accurately reflects the law and the facts." *United States v. Arias*, 984 F.2d 1139, 1143 (11th Cir. 1993) (citation and internal quotation marks omitted).

Section 7206(2) of Title 26 makes it unlawful for any person to willfully aid or assist in the preparation or presentation of documents under the internal revenue laws, including tax returns, that are fraudulent or false as to any material matter. 26 U.S.C. § 7206(2). In the context of federal criminal tax statutes, including § 7206, the standard for willfulness has been recited as the "voluntary, intentional violation of a known legal duty." *See, e.g.*, *Cheek v. United States*, 498 U.S. 192, 201 (1991) (stating that "the standard for the statutory willfulness requirement is

8

the 'voluntary, intentional violation of a known legal duty'") (citation omitted); *United States v. Pomponio*, 429 U.S. 10, 12 (1976) (per curiam) (stating that "'willfully' in these statutes generally connotes a voluntary, intentional violation of a known legal duty") (citation omitted); *United States v. Brown*, 548 F.2d 1194, 1199 (5th Cir. 1977) ("In the misdemeanor and felony tax evasion statutes (26 U.S.C.A. ss 7201 to 7207, inclusive) the word 'willfully' generally connotes a voluntary, intentional violation of a known legal duty."). The Supreme Court has noted that given our "complex tax system," this interpretation of willfulness protects "taxpayers who earnestly wish to follow the law" and reflects Congress's intent to "construct penalties that separate the purposeful tax violator from the well-meaning, but easily confused, mass of taxpayers." *United States v. Bishop*, 412 U.S. 346, 360–61 (1973).

In *Pomponio*, a case involving the filing of false tax returns in violation of 26 U.S.C. § 7206(1), the district court instructed the jury that a willful act was one done "voluntarily and intentionally and with the specific intent to do something which the law forbids, that is to say with the bad purpose either to disobey or to disregard the law," and that good motive alone was never a defense where the act done was a crime. *Pomponio*, 429 U.S. at 11 (parentheses omitted). The Fourth Circuit reversed, concluding that § 7206(1) required a finding of evil motive. *Id.* In reversing the Fourth Circuit, the Supreme Court reiterated that willfully simply

9

meant "a voluntary, intentional violation of a known legal duty" in the tax context. *Id.* at 12. The Court ultimately held that the district court had "adequately instructed the jury on willfulness." *Id.* at 13.

Though they are not binding, our pattern jury instructions are a valuable resource. *See United States v. Dohan*, 508 F.3d 989, 994 (11th Cir. 2007) (per curiam). The pattern instructions contain two alternative willfulness instructions. The first, B9.1A, states that "willfully" means that an act "was committed voluntarily and purposely, with the intent to do something the law forbids; that is, with the bad purpose to disobey or disregard the law." Eleventh Circuit Pattern Jury Instructions (Criminal Cases) Basic Instruction 9.1A (2016). The instruction further states that although the person must act with intent to do something the law forbids, he need not be aware of the specific law or rule that he is violating. *Id.* The second instruction, B9.1B, states that "willfully" means that an act "was done voluntarily and purposely with the specific intent to violate a known legal duty, that is, with the intent to do something the law forbids." *Id.*, Basic Instruction 9.1B. The commentary to B9.1A notes that while the first instruction is appropriate in most cases where willfulness is an element, the second is appropriate in tax and currency-structuring cases, which typically involve "highly technical statutes that present the danger of ensnaring individuals engaged in

10

apparently innocent conduct." *See id.*, Annotations and Comments to Basic Instruction 9.1A (quoting *Bryan v. United States*, 524 U.S. 184, 194 (1998)).

The specific offense instruction for § 7206(2) lists five elements that the government must prove at trial. *Id.*, Offense Instruction 109.2. The last element states that the defendant must have acted "with the intent to do something the Defendant knew the law forbids." *Id.* The commentary to this instruction notes that a willful violation of the statute "has been defined as the voluntary, intentional violation of a known legal duty." *Id.*, Annotations and Comments to Offense Instruction 109.2. But it also states that because the specific offense instruction "incorporates this definition of willfulness in its elements, the committee does not believe that it is necessary to also include Basic Instruction 9.1B for this offense." *Id.*

Here, the district court concluded that pattern instruction B9.1B was inapplicable because Severino's offense was not particularly complex. It therefore gave the equivalent of instruction O109.2 for the offense elements and the equivalent of instruction B9.1A for willfulness. Severino contends that the court's failure to give instruction B9.1B was an abuse of discretion.

Severino is correct that in the context of criminal tax statutes, willfulness is generally defined as the "voluntary, intentional violation of a known legal duty." *See, e.g.*, *Cheek*, 498 U.S. at 201; *Pomponio*, 429 U.S. at 12; *Bishop*, 412 U.S. at

11

360; *Brown*, 548 F.2d at 1199; *see also* Eleventh Circuit Pattern Jury Instructions (Criminal Cases), Annotations and Comments to Basic Instruction 9.1A (indicating that this definition is appropriate in tax cases).  Nevertheless, the requested instruction was substantially covered by the given offense instruction, which was modeled on instruction O109.2 and required the government to prove that Severino acted "with the intent to do something [he] knew the law forbids."  The commentary to pattern offense instruction 109.2 specifically states that it incorporates the definition of willfulness as the "voluntary, intentional violation of a known legal duty" into its elements, and therefore instruction B9.1B is unnecessary.  *See* Eleventh Circuit Pattern Jury Instructions (Criminal Cases), Annotations and Comments to Offense Instruction 109.2.  Because Severino's requested instruction was subsumed into the offense instruction, the district court did not abuse its discretion in declining to issue it.  *See House*, 684 F.3d at 1196.

In addition to the offense instruction, the district court also gave the equivalent of instruction B9.1A to define willfulness.  The commentary to the pattern jury instructions indicates that B9.1A contains a lesser mens rea than B9.1B.  *See* Eleventh Circuit Pattern Jury Instructions (Criminal), Annotations and Comments to Basic Instruction 9.1A.  But Severino does not specifically argue that the jury was misled by this additional instruction.  In addition, any error in giving the instruction was harmless, as it still communicates that willfully means to act

12

"voluntarily and purposely, with the intent to do something the law forbids; that is with the bad purpose to disobey or disregard the law." This formulation is not substantially different from the offense instruction, and the Supreme Court concluded that similar language was sufficient to instruct the jury on willfulness in *Pomponio*. *See Pomponio*, 429 U.S. at 11, 13.

## III.

We review challenges to the sufficiency of the evidence de novo, viewing the evidence in the light most favorable to the government and drawing all reasonable inferences and credibility choices in favor of the verdict. *United States v. Klopf*, 423 F.3d 1228, 1236 (11th Cir. 2005). "Evidence is sufficient to support a conviction if a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt." *United States v. Guevara*, 894 F.3d 1301, 1307 (11th Cir. 2018) (quoting *United States v. Bowers*, 811 F.3d 412, 424 (11th Cir. 2016)). To establish guilt beyond a reasonable doubt, the evidence need not "exclude every reasonable hypothesis of innocence," and the jury is "free to choose among reasonable constructions of the evidence." *United States v. Cruz-Valdez*, 773 F.2d 1541, 1545 (11th Cir. 1985) (en banc) (citation omitted).

## A.

As noted above, 26 U.S.C. § 7206(2) makes it unlawful for any person to willfully aid or assist in the preparation of a tax return that is fraudulent or false as

13

to any material matter. 26 U.S.C. § 7206(2). In connection with his challenge to the district court's failure to give the jury instruction that he requested, Severino challenges only the element of willfulness, arguing that the government failed to prove the intentional violation of a known legal duty. While the government contends that this standard does not apply, it alternatively asserts that it did show that Severino violated a known legal duty, pointing to an attestation that every taxpayer or preparer must sign to verify that a return is accurate. But although various tax returns were introduced into evidence, there is no indication that the attestation—which Severino did not sign on any return—was ever called to the jury's attention.

Nevertheless, there is substantial evidence that Severino acted with the requisite level of willfulness. The given offense instruction, which subsumed the willfulness instruction that Severino requested, required the government to show that Severino acted "with the intent to do something [he] knew the law forbids." The government's expert testified that in claiming the American Opportunity Credit, education expenses had to be paid in the same tax year for which the credit was claimed and that Form 8863 was supposed to be attached to the tax return. The form required the name of the student and educational institution attended, and the amount of expenses incurred—information that witnesses later testified was never provided to Severino and was falsified. Viewed in the light most favorable

14

to the government, a reasonable juror could find beyond a reasonable doubt that

Severino acted "with the intent to do something [he] knew the law forbids."

B.

To prove wire fraud, the government must show that the defendant:

(1) intentionally participated in a scheme or artifice to defraud a person of money

or property; and (2) used or caused to be used a wire to execute the scheme or

artifice.  *United States v. Langford*, 647 F.3d 1309, 1320 (11th Cir. 2011); 18

U.S.C. § 1343.  Although the term "scheme to defraud" is "incapable of precise

definition," it includes "any pattern or cause of action, including false and

fraudulent pretenses and misrepresentations, intended to deceive others in order to

obtain something of value."  *United States v. De La Mata*, 266 F.3d 1275, 1298

(11th Cir. 2001) (citation omitted).

Severino contends that the evidence was insufficient to establish a "scheme

to defraud" because his conduct was not sufficiently sophisticated.  But neither the

wire fraud statute nor this Court requires sophistication to establish a scheme to

defraud.  *See* 18 U.S.C. § 1343; *De Le Mata*, 266 F.3d at 1298.  Here, the

government linked Severino to hundreds of tax returns claiming the American

Opportunity Credit without the requisite documentation, and it presented testimony

showing that Severino had claimed the credit on taxpayers' behalf without any

supporting information or instruction.  In light of this evidence, a reasonable juror

15

could find beyond a reasonable doubt that Severino engaged in a pattern of fraudulent conduct "intended to deceive others in order to obtain something of value," regardless of his lack of sophistication. *See De La Mata*, 266 F.3d at 1298.

C.

To prove aggravated identity theft, the government must show that the defendant: "(1) knowingly transferred, possessed, or used; (2) the means of identification of another person; (3) without lawful authority; (4) during and in relation to a felony enumerated in § 1028A(c)," including wire fraud. *United States v. Barrington*, 648 F.3d 1178, 1192 (11th Cir. 2011) (citation omitted); 18 U.S.C. § 1028A(a)(1). The government may establish that a defendant acted "without lawful authority" by showing that an individual's identity was used without permission or for an unlawful purpose. *See United States v. Zitron*, 810 F.3d 1253, 1260 (11th Cir. 2016) (per curiam).

Here, the evidence was sufficient to support Severino's convictions on both aggravated identity theft counts. With respect to Count 16, Severino contends that because J.L.M. did not testify, there was insufficient evidence to conclude that he used J.L.M.'s identity without lawful authority. But Oviedo—the individual on whose tax return J.L.M. was listed as a dependent—testified that he did not know J.L.M., did not tell Severino that J.L.M. was his niece, did not provide J.L.M.'s Social Security number, and did not incur any of the education expenses claimed

16

on his return.  Viewing this evidence in the light most favorable to the government, a reasonable juror could find beyond a reasonable doubt that Severino used J.L.M.'s Social Security number without lawful authority because it was used for an improper purpose.  *See Zitron*, 810 F.3d at 1260.

As to Count 17, Severino contends that a jury could not conclude that he used Mestre's identity without lawful authority.  But Count 17 of the superseding indictment refers to the use of Mestre's identity in January 2016, which corresponds to Llerena's 2015 return.  Mestre testified that he was not aware that he was listed as a dependent on Llerena's 2015 return, and Llerena herself testified that she had instructed Severino not to list Mestre as a dependent.  Based on this testimony, a reasonable juror could find beyond a reasonable doubt that Severino used Mestre's Social Security number without lawful authority.

## IV.

We review the reasonableness of a sentence for an abuse of discretion, first examining whether the district court committed any significant procedural error and then whether the sentence is substantively reasonable under the totality of the circumstances.  *United States v. Tome*, 611 F.3d 1371, 1378 (11th Cir. 2010); *see also United States v. Wenxia Man*, 891 F.3d 1253, 1275 (11th Cir. 2018) (addressing argument that district court improperly considered defendant's national origin as a matter of substantive reasonableness).

The district court must impose a sentence that is "sufficient, but not greater than necessary, to comply with the purposes" in § 3553(a)(2), including the need to reflect the seriousness of the offense, promote respect for the law, provide just punishment, deter criminal conduct, and protect the public.  18 U.S.C. § 3553(a)(2).  The court must also consider the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the guideline range, pertinent policy statements of the Sentencing Commission, the need to avoid unwanted sentencing disparities, and the need to provide restitution.  *Id.* § 3553(a)(1), (3)–(7).  Lack of remorse is relevant to several of these factors, including the defendant's characteristics and the need to promote respect for the law and protect the public.  *United States v. McNair*, 605 F.3d 1152, 1231 (11th Cir. 2010).  A sentence is substantively unreasonable if a district court: "(1) fails to afford consideration to relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors."  *United States v. Rosales-Bruno*, 789 F.3d 1249, 1256 (11th Cir. 2015) (citation omitted).  "The weight to be accorded any given § 3553(a) factor is a matter committed to the sound discretion of the district court."  *United States v. Clay*, 483 F.3d 739, 743 (11th Cir. 2007) (citation omitted).  Still, "unjustified reliance" on any one factor "may be a symptom of an unreasonable sentence."  *United States v. Pugh*, 515

18

F.3d 1179, 1191 (11th Cir. 2008). "[W]e will remand for resentencing if we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *Clay*, 483 F.3d at 743 (citation omitted).

Race, sex, national origin, creed, religion, and socio-economic status are factors that are "not relevant in the determination of a sentence." U.S.S.G. § 5H1.10. Regardless of length, a sentence may be unreasonable "if it was substantially affected by the consideration of impermissible factors." *Clay*, 483 F.3d at 745.

Severino's sentence is not substantively unreasonable. The district court did not unjustifiably rely on deterrence or fail to give adequate consideration to the factors that Severino emphasizes—specifically, his lack of sophistication and lack of criminal history. While the court emphasized the need for deterrence, it was within the district court's discretion to assign this factor weight, and the record shows that the other § 3553(a) factors were also considered—particularly the duration of the conduct, the amount of loss, and Severino's lack of remorse. 18 U.S.C. § 3553(a)(1), (2)(A); *Clay*, 483 F.3d at 743. Further, the record shows that the district court did consider Severino's lack of sophistication and lack of criminal history. The court noted that Severino's fraud was not sophisticated, reviewed the

19

PSI detailing his lack of formal education, and indicated that Severino's lack of criminal history had already been factored into his guideline range. That the court chose to assign greater weight elsewhere was not an abuse of discretion. *See Clay*, 483 F.3d at 743.

Further, the district court did not improperly consider Severino's ethnicity or immigrant status in imposing sentence. When invited to discuss any factor in his favor, Severino referenced the fact that he had immigrated to the United States and worked hard to rise from poverty. The district court referred to Severino's immigrant status only to reject that argument, noting that despite becoming a U.S. citizen, he had chosen to violate the law. This short exchange is insufficient to show that Severino's sentence was "substantially affected by the consideration of impermissible factors." *Id.* at 745. In addition, though the court referred to the conduct at issue "going on in the communities out there" and stated that "these people don't care," there is nothing to suggest that the court was specifically referring to a particular immigrant community, as Severino contends.

V.

For the reasons stated above, Severino's convictions and sentence are AFFIRMED.

20