[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-10777
Non-Argument Calendar

_____

D.C. Docket No. 9:19-cr-80024-RAR-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

PAUL E. SENAT,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(June 14, 2021)

Before JORDAN, GRANT, and ANDERSON, Circuit Judges.

PER CURIAM:

Paul Senat appeals his convictions and sentences for theft of government money, in violation of 18 U.S.C. § 641, and aiding and assisting the preparation of false tax returns, in violation of 26 U.S.C. § 7206(2).  On appeal, he first argues that there was insufficient evidence to convict him because the jury's verdict was inconsistent and because the government failed to present direct evidence that he prepared the tax returns.  Next, he argues that the district court erred in denying his motion for mistrial based on a prejudicial statement by a witness because the statement was so damaging the curative instructions were insufficient.  Next, he argues the district court incorrectly used an extrapolation method to calculate the total monetary loss because it should have investigated each tax return individually to show that any loss was due to fraud and not just negligence or mistake.  Finally, he argues that the district court erred in assessing a two-step guideline enhancement for being a leader of a criminal scheme because he did not direct the actions of any other tax preparer.

## I.

We review "*de novo* whether there is sufficient evidence in the record to support a jury's verdict in a criminal trial, viewing the evidence in the light most favorable to the government, and drawing all reasonable factual inferences in favor of the jury's verdict." *United States v. Jiminez*, 564 F.3d 1280, 1284 (11th Cir. 2009).  The district court's denial of a motion for judgment of acquittal "will be

upheld if a reasonable trier of fact could conclude that the evidence establishes the defendant's guilt beyond a reasonable doubt." *United States v. Rodriguez*, 218 F.3d 1243, 1244 (11th Cir. 2000). The test is the same even where most of the evidence is circumstantial. *United States v. Morris*, 20 F.3d 1111, 1114 (11th Cir. 1994).

"It is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt." *United States v. Young*, 906 F.2d 615, 618 (11th Cir. 1990). This is so because "[a] jury is free to choose among reasonable constructions of the evidence." *United States v. Vera*, 701 F.2d 1349, 1357 (11th Cir. 1983) (quotation marks omitted). Thus, we must sustain a verdict where "there is a reasonable basis in the record for it." *United States v. Farley*, 607 F.3d 1294, 1333 (11th Cir. 2010) (quotation marks omitted).

We assume that "the jury made all credibility choices in support of the verdict." *United States v. Wilchcombe*, 838 F.3d 1179, 1188 (11th Cir. 2016). Additionally, "[e]ach count in an indictment is separately considered," meaning that "inconsistency between verdicts on different counts of the indictment does not vitiate convictions on those counts of which the defendant is found guilty." *United*

3

*States v. Rosenthal*, 793 F.2d 1214, 1229 (11th Cir.), *modified*, 801 F.2d 378 (11th Cir. 1986).

It is illegal to knowingly receive, conceal, or retain stolen government money or property with the intent to convert it to one's own use or gain. 18 U.S.C. § 641. In order for a defendant to be convicted of theft of government property under 18 U.S.C. § 641, the government must establish that "(1) the money described in the indictment belonged to the United States or an agency thereof; (2) the defendant appropriated the property to his own use; and (3) the defendant did so knowingly with intent to deprive the government of the money." *United States v. Wilson*, 788 F.3d 1298, 1309 (11th Cir. 2015). "[T]o establish the requisite criminal intent, the government need only prove that defendant knowingly used government property for [his] own purpose[] in a manner that deprived the government of the use of that property." *Id.* (quotation marks omitted, second and third alterations in original).

To prove a violation of 26 U.S.C. § 7206(2), the government must show that the defendant (1) willfully and knowingly aided or assisted (2) in the preparation or filing of a federal income tax return (3) that contained false material statements. *See* 26 U.S.C. § 7206(2); *United States v. Haynes*, 573 F.2d 236, 240 (5th Cir. 1978). The defendant does not need to sign or prepare the return to be prosecuted under this statute. *United States v. Wolfson*, 573 F.2d 216, 225 (5th Cir. 1978).

4

Willfulness is a "voluntary, intentional violation of a known legal duty" that does not require proof of evil motive or bad intent. *United States v. Brown*, 548 F.2d 1194, 1199 (5th Cir. 1977). This is generally shown through circumstantial evidence, such as making false invoices or documents, concealing assets to hide the source of income, and any other conduct that misleads or conceals. *Id.* at 1199 & n.14.

There is sufficient evidence for the jury to have found Senat guilty beyond a reasonable doubt for Counts 4 through 11.[1] The following evidence supports that Senat aided or assisted in the preparation or filing of the tax returns in question. For Count 4, de Jesus testified that Senat did her taxes, and evidence showed that Senat's name and PTIN were on her 2012 tax return that claimed false business losses. For Counts 5 and 11, Leger testified that Senat did his taxes, and evidence showed that Senat's name and PTIN were on his 2013 and 2014 tax returns that claimed false business losses. For Counts 6 and 10, Rovezzi testified that Senat did his taxes, and evidence showed that Senat's name and PTIN were on his 2013 and 2014 tax returns that claimed false business losses and AOC. For Counts 7 and 9, Ehman testified that Senat did her taxes, and evidence showed that Senat's name and PTIN were on her 2013 and 2014 tax returns that claimed false business

---

[1]    Senat abandoned any challenge to Count 12 by failing to fairly raise the issue in his brief on appeal.

losses.  For Count 8, Culmer testified that Senat did her taxes, and evidence showed that Senat's name and PTIN were on her 2014 tax return that claimed false business losses and AOC.   Additionally, each preparer in the office had their own clients, and Senat had the most.  He was also the person that filed for an EFIN for his business.  Although Senat presented evidence that he may not have prepared these tax returns because other preparers would use his PTIN, he does not need to be the one who actually prepared and sent in the returns to be convicted under 26 U.S.C. § 7206(2).  Even if he did not press "send," just registering for a PTIN and allowing someone else in his business to use his name and PTIN would count as "assisting" in the preparation of tax returns.  26 U.S.C. § 7206(2); *Wolfson*, 573 F.2d at 225.

Next, the following evidence shows that the tax returns contained statements that Senat knew were false.  The statements about private business losses and college attendance were all false.  He filed false education credits on his own returns, showing that he knew how to claim the false education credits.  It also shows that he did not claim the same AOC credits on other people's tax returns by mistake.  None of the clients asked for the false information to be on their return, and none provided any documentation that would cause Senat to put the business losses or claim the AOC on their returns.

6

Much of the same evidence also supports that Senat knowingly and willfully assisted in the preparation of tax returns. In particular, his name was listed as the preparer for the tax returns in question, which is evidence that he knew about and helped create the false returns. Additionally, the fact that he filed for false education credits on his own tax returns suggests that he was willing to do so on other returns. He also took classes on tax preparation through the IRS, suggesting that he had the expertise to maximize the EITC on the tax returns in this case. Also, he collected large fees without his clients' knowledge, over $370,000 in 2014, which was deposited into a business bank account that he was the sole owner of. *Brown*, 548 F.2d 1194, 1199 & n.14. This shows motive for assisting in preparing fraudulent tax returns.

There was also sufficient evidence to find Senat guilty of Count 2—i.e. theft of government money. First, the money still belonged to the government because it had not been cashed by the intended recipient, JetEx. Second, the money was deposited into Senat's personal account that only he had access to, which means that he took the money for personal use. Third, the government presented evidence that he deposited it on the same day that he deposited another personal check into his account. Despite what Senat argues, there was no evidence presented that anyone else ever withdrew or deposited money into his personal account where

7

JetEx's check was deposited, but rather, only that others would withdraw funds from Senat's business account.

Despite Senat's argument about his signature not matching, Kahalani was not certified as an expert, and the jury could determine if her evaluation of whether the signatures matched was credible. *Wilchcombe*, 838 F.3d at 1188. Besides, she testified that his signature on the other personal check that he deposited that day did not exactly match either. Based on this evidence, the jury could find that Senat endorsed both checks, even though his signatures did not match.

Senat's argument that it would have been impossible for him to steal the check also fails. To convict under 18 U.S.C. § 641, the government does not have to show how Senat obtained possession of the check. He just needed to knowingly use the check for his own purpose. *Wilson*, 788 F.3d at 1309.

Finally, Senat argues that his conviction on Count 2 was inconsistent with the jury finding him not guilty of Counts 1 (fraudulent endorsement) and 3 (identity theft). However, the jury considers each count separately, so it was possible for the jury to have reasonable doubt that Senat was guilty of Counts 1 and 3, but to find him guilty of Count 2. *Rosenthal*, 793 F.2d at 1229. This can be explained by the jury having reasonable doubt that Senat was the one who forged Howe's signature (involving Counts 1 and 3) but nonetheless concluding that he

8

was guilty of Count 2 by depositing the check into his personal account in violation of § 641 (theft of government money).

Because the evidence supported Senat's convictions, we reject these arguments.


## II.

We review the district court's denial of a motion for a mistrial for abuse of discretion. *United States v. Saldarriaga*, 987 F.2d 1526, 1531 (11th Cir. 1993). The district court's denial of a motion for a new trial is also reviewed for abuse of discretion. *United States v. Martinez*, 763 F.2d 1297, 1312 (11th Cir. 1985).

Federal Rule of Criminal Procedure 33(a) provides that a district court may "grant a new trial if the interest of justice so requires." Improper comments require granting motion for a mistrial or new trial only "if the defendant's substantial rights are prejudicially affected." *United States v. Newsome*, 475 F.3d 1221, 1227 (11th Cir. 2007). "This occurs when there is a reasonable probability that, but for the remarks, the outcome of the trial would have been different." *Id*. We "make this determination in the context of the entire trial and in light of any curative instruction." *Id*. "[W]hen the record contains sufficient independent evidence of guilt, any error was harmless." *Id*. A partial acquittal "alone is telling proof that

[the defendant] was not prejudiced" by an improper remark. *United States v. Rodriguez*, 765 F.2d 1546, 1560 (11th Cir. 1985) (quotation marks omitted).

We have held that "[t]he voicing of potentially prejudicial remarks by a witness is common, and any prejudice is generally cured efficiently by cautionary instructions from the bench." *United States v. Delgado*, 321 F.3d 1338, 1347 (11th Cir. 2003) (quotation marks omitted). Such an instruction "purges the taint of a prejudicial remark because a jury is presumed to follow jury instructions." *United States v. Brown*, 441 F.3d 1330, 1356 (11th Cir. 2006) (quotation marks omitted). This is especially true when the district court acts "promptly and decisively." *See United States v. Eubanks*, 876 F.2d 1514, 1517 (11th Cir. 1989). "[W]hen a district court gives a curative instruction, the reviewing court will reverse only if the evidence is so highly prejudicial as to be incurable by the trial court's admonition." *Delgado*, 321 F.3d at 1347 (quotation marks omitted).

Senat fails to show that he was prejudiced by the witness's statement because the jury acquitted him of five of the counts against him, and there was sufficient evidence to convict him of the remaining counts. Additionally, the district court acted promptly to issue curative instructions, and there is no evidence that they were insufficient. Therefore, the district court did not abuse its discretion by denying Senat's motion for mistrial and motion for new trial.

III.

We review the district court's determination of the loss amount for clear error. *United States v. Cavallo*, 790 F.3d 1202, 1232 (11th Cir. 2015). The government has the burden to prove the losses attributed to the defendant by a preponderance of the evidence. *Id.* The Guidelines do not require that the sentencing court make a precise determination of loss. *Id.* "Instead, [a] sentencing court need only make a reasonable estimate of the loss, given the available information." *Id.* (quotation marks omitted, alteration in original).

"At sentencing, the district court may take into account conduct for which the defendant was not charged or convicted, so long as the government proves such conduct by a preponderance of the evidence." *Wilson*, 788 F.3d at 1317. Where the defendant challenges the loss amount calculation, the government must support it "with reliable and specific evidence." *Id.* at 1318.

"When an appellant fails to challenge properly on appeal one of the grounds on which the district court based its judgment, he is deemed to have abandoned any challenge of that ground, and it follows that the judgment is due to be affirmed." *United States v. King*, 751 F.3d 1268, 1277 (11th Cir. 2014) (quotation marks and alteration omitted). An appellant's failure to plainly and prominently raise an issue on appeal by not "devot[ing] a discrete, substantial portion of his argumentation to that issue" abandons the issue. *United States v. Jernigan*, 341 F.3d 1273, 1283 n.8 (11th Cir. 2003) (determining that four passing references to an issue, including in

11

a sub-heading and in the summary of the argument, were insufficient to preserve the issue for appellate review); *see also United States v. Godwin*, 765 F.3d 1306, 1319 n.5 (11th Cir. 2014) ("Because [the appellant's] claims are not designated as discrete issues in his brief to this Court and are not supported by legal authority and substantive analysis, they are not properly before us.").

Senat does not challenge one of the two methods that the district court used to calculate total loss, abandoning that issue. Therefore, we may affirm this issue without reaching his arguments as to the court's use of the extrapolation method.

IV.

The district court's application of a sentencing enhancement for the "defendant's role as an organizer or leader is a factual finding that we review for clear error." *United States v. Zitron*, 810 F.3d 1253, 1261 (11th Cir. 2016) (quotation marks omitted). In order to be clearly erroneous, the finding of the district court must leave us with a "definite and firm conviction that a mistake has been committed." *United States v. Rothenberg*, 610 F.3d 621, 624 (11th Cir. 2010) (quotation marks omitted).

The district court applies a two-level enhancement when a defendant is an organizer, leader, manager, or supervisor in a criminal activity that involved at least one participant. *Zitron*, 810 F.3d at 1261; U.S.S.G. § 3B1.1(c). "[T]he

12

assertion of control or influence over only one individual is enough to support a § 3B1.1(c) enhancement." *United States v. Phillips*, 287 F.3d 1053, 1058 (11th Cir. 2002) (quotation marks omitted, alteration in original).

At the sentencing hearing, a former employee testified that Senat trained her to falsify tax returns. She also testified that Senat would review the returns she prepared and make further changes. Therefore, the district court did not clearly err in applying a guidelines enhancement for being a leader of criminal activity. Accordingly, we affirm.

**AFFIRMED.**